UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IFG NETWORK SECURITIES, INC.

     Plaintiff,

v.                                                  Case No. 6:03-CV-103 ORL22KRS

REX T. KING and RUA L. KING,

     Defendants.

_____/

---

**THIRD SUPPLEMENTAL APPENDIX IN SUPPORT OF
PLAINTIFF IFG NETWORK SECURITIES, INC.'S
MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

---

Burton W. Wiand, FBN 407690
Elaine M. Rice, FBN 549975
FOWLER WHITE BOGGS BANKER P.A.
501 East Kennedy Boulevard
Tampa, Florida 33602
Telephone: (813) 228-7411
Facsimile:  (813) 229-8313

*Attorneys for Plaintiff
IFG Network Securities, Inc.*

# TABLE OF CONTENTS

**Document**                                                                                    **Tab**

Declaration of Thomas Wiltrakis ................................................................................1

Intrados, S.A. Trust Agreement, signed by Rex T. King and Rua L. King ..........................2

Brookstreet Securities Corporation's Motion for Temporary Restraining Order
and Preliminary and Permanent Injunction, *Brookstreet Securities Corp. v.
Datino,* No. 8:02-CV-1498-T-23MAP ...............................................................................3

Order Granting Motion for Preliminary Injunction, *Brookstreet Securities
Corp. v. Datino*; No. 8-cv-1498-T-24EAJ (M.D. Fla. 2002) ...............................................4

NASD Notice to Members 93-64, "SEC Approves Amendments Concerning
Arbitration of Employment-Related Disputes: Effective October 1, 1993" ..........................5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the

following by hand delivery this 4th day of April 2003 to:

Joel Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
Clearwater, Florida 33762

*Attorney for Defendants*

Elaine M. Rice

1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WASHINGTON SQUARE SECURITIES,
INC.,

          PLAINTIFF,

    v.

DONALD O. SOWERS, THELMA J.
SOWERS, GLENN B. CRABTREE and
GOLDIE ALKIRE,

          DEFENDANTS.

Case No. _____

**DECLARATION OF
THOMAS WILTRAKIS**

I, Thomas Wiltrakis, state:

1.    I am Counsel for the ING Advisors Network.

2.    As Counsel for the ING Advisors Network, I supervise the litigation, arbitration and adversary proceedings involving broker-dealers headquartered in the Untied States that are affiliated with or owned by ING-North America, including that involving the Plaintiff Washington Square Securities Inc. ("Washington Square").

3.    By making this Declaration, it is not my intention to waive either the attorney/client privilege or the attorney work product doctrine and I do not do so.

4.    The facts that I set forth in this Declaration I learned during my tenure as Director of Arbitration for the National Association of Securities Dealers, Inc., n/k/a NASD-DR ("NASD").

5.    I served as Director of Arbitration for the NASD from approximately November of 1979 through June of 1983.

6.      I am competent to make this Declaration and if called to testify would, based upon my experience as Director of Arbitration and my experience in the securities industry, offer testimony consistent with that contained in this Declaration.

7.      I have reviewed the NASD Code of Arbitration, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference.

8.      Since I was Director of Arbitration, the Code has been amended, though not materially.

9.      The Code of Arbitration contains two arbitration provisions.

10.     Rule 10301(a) provides, in pertinent part:

> (a)      Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by and duly executed and enforceable written agreement or upon the demand of the customer. A claim involving a member in the following categories shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim after is has arisen:

> (1)      A member whose membership is terminated, suspended, canceled, or revoked;

> (2)      A member that has been expelled from the NASD; or

> (3)      A member that is otherwise defunct.

11.     Rule 10101 provides, in pertinent part:

> This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with

the business of any member of the Association, or arising
our of the employment or termination of employment of
associated person(s) with any member, with the exception
of disputes involving the insurance business of any member
which is also an insurance company:

      (a)    between or among members;

      (b)    between or among members and associated
persons;

      (c)    between or among members or associated
persons and public customers and others; and

      (d)    between or among members, registered
clearing agencies with which the Association has entered
into an agreement to utilize the Association's arbitration
facilities and procedures, and participants, pledgees, or
other persons using the facilities of a registered clearing
agency, as these terms are defined under the rules of such a
registered clearing agency.

12.    As Director of Arbitration, I was charged with implementing the Code of

Arbitration consistent with: its terms, the Constitution, Articles of Incorporation and

Bylaws of the NASD; directives from the Board of Governors of the NASD; directives

from the Securities and Exchange Commission; the Securities Industry Conference on

Arbitration; and other such materials.

13.    During the time that I served as Director of Arbitration, it was our position

that a broker-dealer was subject to mandatory arbitration by virtue of its membership in

the NASD of claims brought by (i) another broker-dealer; (ii) an associated person; or

(iii) a "customer". Rule 10301(a) sets forth the requirements of mandatory arbitration.

14.   It was the view of the NASD during the time that I was Director of Arbitration that a broker-dealer *could, but did not have to,* arbitrate claims by persons who were not (i) a broker-dealer; (ii) an associated person; or (iii) a customer.  In other words, Rule 10101 gave the NASD the jurisdiction to provide a voluntary arbitration forum for claims brought by "others".

15.   If a person was not a customer of a broker-dealer, the broker-dealer was not required to arbitrate those claims.

16.   It was not, during my tenure as Director of Arbitration, our intent to deviate from the views of SICA with respect to mandatory and voluntary arbitration.

I declare, under penalty of perjury, that the foregoing is true and correct.
Executed on this ___ day of _____, 2002.



Thomas Wiltrakis

7501

©2000 NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ALL RIGHTS RESERVED.

# CODE OF ARBITRATION PROCEDURE
## Table of Contents

10000.   CODE OF ARBITRATION PROCEDURE
   10100.   ADMINISTRATIVE PROVISIONS
      IM-10100.   Failure to Act Under Provisions of Code of Arbitration Procedure
      10101.   Matters Eligible for Submission
      10102.   National Arbitration Committee
      10103.   Director of Arbitration
      10104.   Composition and Appointment of Panels
      IM-10104.   Arbitrators' Honorarium
      10105.   Non-Waiver of Association Objects and Purposes
      10106.   Legal Proceedings
   10200.   INDUSTRY AND CLEARING CONTROVERSIES
      10201.   Required Submission
      10202.   Composition of Panels
      10203.   Simplified Industry Arbitration
      10204.   Applicability of Uniform Code
      10205.   Schedule of Fees for Industry and Clearing Controversies
      10210.   Statutory Employment Discrimination Claims
         10211.   Special Arbitrator Qualifications for Employment Discrimination Disputes
         10212.   Composition of Panels
         10213.   Discovery
         10214.   Awards
         10215.   Attorneys' Fees
         10216.   Coordination of Claims Filed in Court and in Arbitration
   10300.   UNIFORM CODE OF ARBITRATION
      10301.   Required Submission
      10302.   Simplified Arbitration
      IM-10302.   Related Counterclaim
      10303.   Hearing Requirements—Waiver of Hearing
      10304.   Time Limitation Upon Submission
      10305.   Dismissal of Proceedings
      10306.   Settlements
      10307.   Tolling of Time Limitation(s) for the Institution of Legal Proceedings and Extension of Time Limitation(s) for Submission to Arbitration
      10308.   Selection of Arbitrators
      10309.   Composition of Panels
      10310.   Notice of Selection of Arbitrators
      10311.   Peremptory Challenge

**EXHIBIT 1**

## 10000. CODE OF ARBITRATION PROCEDURE

## 10100. ADMINISTRATIVE PROVISIONS

### IM-10100. Failure to Act Under Provisions of Code of Arbitration Procedure

It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2110 for a member or a person associated with a member to:

(a) fail to submit a dispute for arbitration under the NASD Code of Arbitration Procedure as required by that Code;

(b) fail to comply with any injunctive order issued pursuant to Rule 10335;

(c) fail to appear or to produce any document in his possession or control as directed pursuant to provisions of the NASD Code of Arbitration Procedure;

(d) fail to honor an award, or comply with a written and executed settlement agreement, obtained in connection with an arbitration submitted for disposition pursuant to the procedures specified by the National Association of Securities Dealers, Inc., the New York, American, Boston, Cincinnati, Chicago, Pacific, or Philadelphia Stock Exchanges, the Chicago Board Options Exchange, the Municipal Securities Rulemaking Board, or pursuant to the rules applicable to the arbitration of disputes before the American Arbitration Association Association or other dispute resolution forum selected by the parties where timely motion has not been made to vacate or modify such award pursuant to applicable law; or

(e) fail to comply with a written and executed settlement agreement, obtained in connection with a mediation submitted for disposition pursuant to the procedures specified by the National Association of Securities Dealers, Inc.

All awards shall be honored by a cash payment to the prevailing party of the exact dollar amount stated in the award. Awards may not be honored by crediting the prevailing party's account with the dollar amount of the award, unless authorized by the express terms of the award or consented to in writing by the parties. Awards shall be honored upon receipt thereof, or within such other time period as may be prescribed by the award.

Action by members requiring associated persons to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure shall constitute conduct that is inconsistent with just and equitable principles of trade and a violation of Rule 2110.

[Adopted eff. May 1, 1973; amended July 1, 1987; amended by SR-NASD-90-62 eff. May 7, 1991; amended by SR-NASD-95-20 eff. Oct. 2, 1995; amended by SR-NASD-93-38 eff. Jan. 3, 1996; amended by SR-NASD-99-19 eff. May 17, 1999.]

Selected Notices to Members: 95-76.

## 10101. Matters Eligible for Submission

This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(a) between or among members;

(b) between or among members and associated persons;

(c) between or among members or associated persons and public customers, or others; and

(d) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledgees, or other persons using the

### IM-10104. Arbitrators' Honorarium

All persons selected to serve as arbitrators pursuant to the Association's Code of Arbitration Procedure shall be paid an honorarium for each hearing session (including a prehearing conference) in which they participate.

The honorarium shall be $200 for each hearing session, $50 for travel to a canceled hearing, and $75 per day additional honorarium to the chairperson of the panel. The honorarium for a case not requiring a hearing shall be $125.

[Adopted eff. June 14, 1977; amended eff. May 30, 1980; Feb. 8, 1982; Jan. 14, 1987; amended by SR-NASD-97-79 eff. March 18, 1999; amended by SR-NASD-99-23 eff. March 18, 1999.]

Selected Notices to Members: 99-23.

### 10105. Non-Waiver of Association Objects and Purposes

The submission of any matter to arbitration under this Code shall in no way limit or preclude any right, action or determination by the Association which it would otherwise be authorized to adopt, administer or enforce. If any matter comes to the attention of an arbitrator during and in connection with the arbitrator's participation in a proceeding, either from the record of the proceeding or from material or communications related to the proceeding, that the arbitrator has reason to believe may constitute a violation of the Association's Rules or the federal securities laws, the arbitrator may initiate a referral of the matter to the Association for disciplinary investigation; provided, however, that any such referral should only be initiated by an arbitrator after the matter before him has been settled or otherwise disposed of, or after an award finally disposing of the matter has been rendered pursuant to Rule 10330 of the Code.

[Amended by SR-NASD-93-75 eff. Aug. 15, 1994.]

### 10106. Legal Proceedings

No party shall, during the arbitration of any matter, prosecute or commence any suit, action, or proceeding against any other party touching upon any of the matters referred to arbitration pursuant to this Code.

Selected Notices to Members: 84-71, 94-61.

[The next page is 7541.]

## 10200. INDUSTRY AND CLEARING CONTROVERSIES

### 10201. Required Submission

(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

(b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

(c) Any dispute, claim or controversy involving an act or failure to act by a clearing member; a registered clearing agency; or participants, pledgees, or other persons using the facilities of a registered clearing agency, under the rules of any registered clearing agency with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures shall be arbitrated in accordance with such agreement and the rules of such registered clearing agency.

[Amended eff. Oct. 1, 1993; amended by SR-NASD-97-77 eff. Jan. 1, 1999; amended by SR-NASD-99-08 eff. Jan. 18, 2000.]

Selected Notice to Members: 99-96.

### 10202. Composition of Panels

(a) In disputes subject to arbitration that arise out of the employment or termination of employment of an associated person, and that relate exclusively to disputes involving employment contracts, promissory notes or receipt of commissions, the panel of arbitrators shall be appointed as provided by paragraph (b)(1) or (2) or Rule 10203, whichever is applicable. In all other disputes arising out of the employment or termination of employment of an associated person, the panel of arbitrators shall be appointed as provided by Rule 10212, 10302 or 10308, whichever is applicable.

(b)(1) Composition of Arbitration Panel

(A) Claims of $50,000 or Less

If the amount of a claim is $50,000 or less, the Director shall appoint an arbitration panel composed of one non-public arbitrator, unless the parties agree to the appointment of a public arbitrator.

(i) If the amount of a claim is $25,000 or less and an arbitrator appointed to the case requests that a panel of three arbitrators be appointed, the Director shall appoint an arbitration panel composed of three non-public arbitrators, unless the parties agree to a different panel composition.

(ii) If the amount of a claim is greater than $25,000 and not more than $50,000 and a party in its initial filing or an arbitrator appointed to the case requests that a panel of three arbitrators be appointed, the Director shall appoint an arbitration panel composed of three non-public arbitrators, unless the parties agree to a different panel composition.

(B) Claims of More than $50,000

joint claimant with a member, the member shall pay a non-refundable filing fee and shall pay a hearing session deposit in the amounts specified in paragraph (k) of this Rule. Where multiple hearing sessions are required, the arbitrator(s) may require any of the parties to make additional hearing deposits for each additional hearing session. In no event shall the amount deposited by all parties per hearing session exceed the amount of the largest initial hearing deposit made by any party under the paragraph (k) below.

(b) A hearing session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with an arbitrator, which lasts four (4) hours or less. The forum fee for a pre-hearing conference with an arbitrator shall be the amount set forth in paragraph (k) below as a hearing session deposit for a hearing with a single arbitrator.

(c) The arbitrators, in their award, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees. Forum fees chargeable to the parties shall be assessed on a per hearing session basis and the aggregate for each hearing session may equal but shall not exceed the amount of the largest initial hearing deposit deposited by any party, except in a case where claims have been joined subsequent to filing in which case hearing session fees shall be computed as provided in paragraph (d). The arbitrator(s) may determine in the award that a party shall reimburse to another party any non-refundable filing fee it has paid. Amounts deposited by a party shall be applied against forum fees, if any. In addition to forum fees, the arbitrator(s) may determine in the award the amount of costs incurred pursuant to Rules 10319, 10321, 10322, and 10326, and unless applicable law directs otherwise, other costs and expenses of the parties and arbitrator(s) which are within the scope of the agreement of the parties. The arbitrator(s) shall determine by whom such costs shall be borne. If the hearing session fees are not assessed against a party who has made a hearing deposit, the hearing deposit will be refunded unless the arbitrator determine otherwise.

(d) For claims filed separately which are subsequently joined or consolidated under Rule 10314(d) of this Code, the hearing deposit and forum fees assessable per hearing session after joinder or consolidation shall be based on the cumulative amount i dispute. The arbitrator(s) shall determine by whom such fees shall be borne.

(e) If the dispute, claim, or controversy does not involve, disclose or specify money claim, the non-refundable filing fee assessed on a party who is a member shall b $500. If the dispute, claim, or contorversy does not involve, disclose, or specify a mone claim, the hearing session deposit to be remitted by a party shall be $1000. The amounts may be adjusted by the Director of Arbitration or the panel of arbitrato may require the maximum amount specified in the schedule.

(f) The Association shall retain the total initial amount deposited as hearin session deposits by all the parties in any matter submitted and settled or withdraw within eight business days of the first scheduled hearing session other than a p hearing conference.

(g) Any matter submitted and thereafter settled or withdrawn subsequent to t commencement of the first hearing session, including a pre-hearing conference with arbitrator, shall be subject to an assessment of forum fees and costs incurred pursu to Rules 10319, 10321, 10322, and 10326 based on hearing sessions held and schedu within eight business days after the Association receives notice that the matter been settled or withdrawn. The arbitrator(s) shall determine by whom such fees costs shall be borne.

(h) In each industry or clearing controversy which is required to be submitte arbitration before the Association as set forth in Rule 10201, above, where inte injunctive relief is requested or where a court has issued a temporary injunction a party requests expedited proceedings, a total non-refundable surcharge of $2,500 s

**Rule 102**

## 10210. Statutory Employment Discrimination Claims

The Rule 10210 Series shall apply only to disputes that include a claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute. The Rule 10210 Series shall supersede any inconsistent Rules contained in this Code.

[Adopted by SR-NASD-99-08 eff. Jan. 18, 2000.]

Selected Notice to Members: 99-96.

## 10211. Special Arbitrator Qualifications for Employment Discrimination Disputes

### (a) Minimum Qualifications for All Arbitrators

Only arbitrators classified as public arbitrators as provided in Rule 10308 shall be selected to consider disputes involving a claim of employment discrimination, including a sexual harassment claim, in violation of a statute.

### (b) Single Arbitrators or Chairs of Three-Person Panels

(1) Arbitrators who are selected to serve as single arbitrators or as chairs of three-person panels should have the following additional qualifications:

(A) law degree (Juris Doctor or equivalent);

(B) membership in the Bar of any jurisdiction;

(C) substantial familiarity with employment law; and

(D) ten or more years of legal experience, of which at least five years must be in either:

(i) law practice;

(ii) law school teaching;

(iii) government enforcement of equal employment opportunity statutes;

(iv) experience as a judge, arbitrator, or mediator; or

(v) experience as an equal employment opportunity officer or in-house counsel of a corporation.

(2) In addition, a chair or single arbitrator with the above experience may not have represented primarily the views of employers or of employees within the last five years. For purposes of this Rule, the term "primarily" shall be interpreted to mean 50% or more of the arbitrator's business or professional activities within the last five years.

### (c) Waiver of Special Qualifications

If all parties agree, after a dispute arises, they may waive any of the qualifications set forth in paragraph (a) or (b) above.

[Adopted by SR-NASD-99-08 eff. Jan. 18, 2000.]

Selected Notice to Members: 99-96.

## 10212. Composition of Panels

For disputes involving a claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute:

(a) Each panel shall consist of either a single public arbitrator or three public arbitrators qualified under Rule 10211, unless the parties agree to a different panel composition.

(b) A single arbitrator shall be appointed to hear claims for $100,000 or less.

answer in court without having exercised this option, it shall have waived its right to assert the pending arbitration claim in court.

(C) The party may not exercise this option after the first hearing has begun on the arbitration claim.

### (b) Option Extended When Claim Is Amended

(1) If the claimant files an amended Statement of Claim adding new claims not asserted in the original Statement of Claim, a respondent named in the amended Statement of Claim shall have the right to move to compel the claimant to assert all related claims in the same court proceeding in which the statutory discrimination claim is pending, to the full extent that the court will accept jurisdiction over the related claims, even if those related claims were asserted in the original Statement of Claim.

(2) The respondent shall notify the claimant in writing, before the time to answer the amended Statement of Claim under Rule 10314 has expired, that it is exercising this option and shall file a copy of such notification with the Director. If the respondent files an answer to the amended Statement of Claim without having exercised this option, it shall have waived its right to move to compel the claimant to assert related claims in court.

### (c) Requirement to Combine All Related Claims

If a party elects to require a current or former associated person to assert all related claims in court, the party shall assert in the same court proceeding all related claims that it has against the associated person to the full extent to which the court will accept jurisdiction over the related claims.

### (d) Right of Respondent to Remain in Arbitration

(1) If there are multiple respondents and a respondent has exercised an option under paragraph (a) or (b), but another respondent wishes to have the claims against it remain in arbitration, then any remaining party may apply for a stay of the arbitration proceeding.

(2) The arbitration shall be stayed unless the arbitration panel determines that the stay will result in substantial prejudice to one or more of the parties. If a panel has not been appointed, the Director shall appoint a single arbitrator to consider the application for a stay. Such single arbitrator shall be selected using the Neutral List Selection System (as defined in Rule 10308) and is not required to have the special employment arbitrator qualifications described in Rule 10211.

### (e) Pre-Filing Certification

(1) Prior to or concurrently with filing a Statement of Claim, a claimant may file with the Director a certification that it had communicated unsuccessfully with the respondent concerning the consolidation of all claims in court prior to filing a Statement of Claim, in an effort to save the expense of arbitration fees. A copy of such certification shall be sent to the respondent at the same time and in the same manner as the filing with the Director.

(2) If, after a certification has been filed, all the respondents later exercise the option to consolidate all claims in court, the Director will return the claimant's filing fee and any hearing session deposits for hearings that have not been held but will retain the member surcharge and any accrued member process fees. If there are any remaining respondents, the filing fee and any hearing deposits will be adjusted to correspond to the claims against the remaining respondents.

### (f) Motion to Compel Arbitration

If a member or a current or former associated person of a member files in court a claim against a member or a current or former associated person of a member that includes matters that are subject to mandatory arbitration, either by the rules of the

## 10300. UNIFORM CODE OF ARBITRATION

### 10301. Required Submission

(a) Any dispute, claim, or controversy eligible for submission under the 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. A claim involving a member in the following categories shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim after it has arisen:

(1) A member whose membership is terminated, suspended, canceled, or revoked;

(2) A member that has been expelled from the NASD; or

(3) A member that is otherwise defunct.

(b) Under this Code, the Director of Arbitration, upon approval of the Executive Committee of the National Arbitration and Mediation Committee, or the National Arbitration and Mediation Committee, shall have the right to decline the use of its arbitration facilities in any dispute, claim, or controversy, where, having due regard for the purposes of the Association and the intent of this Code, such dispute, claim, or controversy is not a proper subject matter for arbitration.

(c) Claims which arise out of transactions in a readily identifiable market may, with the consent of the Claimant, be referred to the arbitration forum for that market by the Association.

(d) Class Action Claims

(1) A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

(2) Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration. However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action to resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators.

(3) No member or associated person shall seek to enforce any agreement to arbitrate against a customer, other member or person associated with a member who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer, other member or person associated with a member is excluded from the class by the court; or (D) the customer, other member or person associated with a member elects not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

withdrawing the Claim. If the Claimant withdraws the Claim, the proceedings shall be discontinued without prejudice to the rights of the parties.

(f) The dispute, claim or controversy shall be submitted to a single public arbitrator knowledgeable in the securities industry appointed by the Director of Arbitration. Unless the public customer demands or consents to a hearing, or the arbitrator calls a hearing, the arbitrator shall decide the dispute, claim or controversy solely upon the pleadings and evidence filed by the parties. If a hearing is necessary, such hearing shall be held as soon as practicable at a locale selected by the Director of Arbitration.

(g) The Director of Arbitration may grant extensions of time to file any pleading upon a showing of good cause.

(h)(1) The arbitrator shall be authorized to require the submission of further documentary evidence as he, in his sole discretion, deems advisable.

(2) If a hearing is demanded or consented to in accordance with paragraph (f), the General Provisions Governing Pre-Hearing Proceedings under Rule 10321 shall apply.

(3) If no hearing is demanded or consented to, all requests for document production shall be submitted in writing to the Director of Arbitration within ten (10) business days of notification of the identity of the arbitrator selected to decide the case. The requesting party shall serve simultaneously its request for document production on all parties. Any response or objections to the requested document production shall be served on all parties and filed with the Director of Arbitration within five (5) business days of receipt of the requests for production. The appointed arbitrator shall resolve all requests under this Rule on the papers submitted.

(i) Upon the request of the arbitrator, the Director of Arbitration shall appoint two (2) additional arbitrators to the panel which shall decide the matter in controversy.

(j) In any case where there is more than one (1) arbitrator, the majority shall be public arbitrators.

(k) In his discretion, the arbitrator may, at the request of any party, permit such party to submit additional documentation relating to the pleadings.

(l) Except as otherwise provided herein, the general arbitration rules of the Association shall be applicable to proceedings instituted under this Rule.

[Amended eff. Oct. 1, 1984; Apr. 1, 1988; May 10, 1989; June 1, 1990; Apr. 26, 1991; Jan. 8, 1992; Sept. 8, 1992; amended by SR-NASD-97-22 eff. Nov. 17, 1998.]

Selected Notices To Members: 98-90.

## IM-10302. Related Counterclaim

As used in Rule 10302, the term "related Counterclaim" shall mean any Counterclaim related to a customer's accounts with a member.

## 10303. Hearing Requirements—Waiver of Hearing

(a) Any dispute, claim or controversy except as provided in Rule 10203 (Simplified Industry Arbitration) or Rule 10302 (Simplified Arbitration), shall require a hearing unless all parties waive such hearing in writing and request that the matter be resolved solely upon the pleadings and documentary evidence.

(b) Notwithstanding a written waiver of a hearing by the parties, a majority of the arbitrators may call for and conduct a hearing. In addition, any arbitrator may request the submission of further evidence.

[The next page is 7573-3.]

### 10304. Time Limitation Upon Submission

No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Rule shall not extend applic statutes of limitations, nor shall it apply to any case which is directed to arbitration a court of competent jurisdiction.

[Amended eff. Oct. 1, 1984.]

### 10305. Dismissal of Proceedings

(a) At any time during the course of an arbitration, the arbitrators may, either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party.

(b) The arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective.

(c) The arbitrators shall at the joint request of all the parties dismiss the proceedings.

[Amended by SR-NASD-97-34, eff. Aug. 6, 1997; SEC Rel. No. 34-38907 (8/14/97).]

### 10306. Settlements

(a) Parties to an arbitration may agree to settle their dispute at any time.

(b) The terms of a settlement agreement do not need to be disclosed to the Association. However, the parties will remain responsible for payment of fees incurred, including fees for previously scheduled hearing sessions. If the parties fail to agree on the allocation of outstanding fees, the fees shall be divided equally among all parties.

[Amended by SR-NASD-2001-21 eff. Nov. 19, 2001.]

Selected Notice to Members: 01-70

### 10307. Tolling of Time Limitation(s) for the Institution of Legal Proceedings and Extension of Time Limitation(s) for Submission to Arbitration

(a) Where permitted by applicable law, the time limitations which would otherwise run or accrue for the institution of legal proceedings shall be tolled where a duly executed Submission Agreement is filed by the Claimant(s). The tolling shall continue for such period as the Association shall retain jurisdiction upon the matter submitted.

(b) The six (6) year time limitation upon submission to arbitration shall not apply when the parties have submitted the dispute, claim or controversy to a court of competent jurisdiction. The six (6) year time limitation shall not run for such period as the court shall retain jurisdiction upon the matter submitted.

[Amended eff. Oct. 1, 1984.]

### 10308. Selection of Arbitrators

*This Rule specifies how parties may select or reject arbitrators, and who can be a public arbitrator.*

#### (a) Definitions

##### (1) "day"

For purposes of this Rule, the term "day" means calendar day.

##### (2) "claimant"

For purposes of this Rule, the term "claimant" means one or more person who file a single claim.

##### (3) "Neutral List Selection System"

**Rule 10308**

(A) is, or within the past three years, was:

(i) associated with a broker or a dealer (including a government securities broker or dealer or a municipal securities dealer);

(ii) registered under the Commodity Exchange Act;

(iii) a member of a commodities exchange or a registered futures association; or

(iv) associated with a person or firm registered under the Commodity Exchange Act;

(B) is retired from engaging in any of the business activities listed in subparagraph (4)(A);

(C) is an attorney, accountant, or other professional who has devoted 20 percent or more of his or her professional work, in the last two years, to clients who are engaged in any of the business activities listed in subparagraph (4)(A); or

(D) is an employee of a bank or other financial institution and effects transactions in securities, including government or municipal securities, and commodities futures or options or supervises or monitors the compliance with the securities and commodities laws of employees who engage in such activities.

(5) "public arbitrator"

(A) The term "public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and is not:

(i) engaged in the conduct or activities described in paragraphs (a)(4)(A) through (D); or

(ii) the spouse or an immediate family member of a person who is engaged in the conduct or activities described in paragraphs (a)(4)(A) through (D).

(B) For the purpose of this Rule, the term "immediate family member" means:

(i) a family member who shares a home with a person engaged in the conduct or activities described in paragraphs (a)(4)(A) through (D);

(ii) a person who receives financial support of more than 50 percent of his or her annual income from a person engaged in the conduct or activities described in paragraphs (a)(4)(A) through (D); or

(iii) a person who is claimed as a dependent for federal income tax purposes by a person engaged in the conduct or activities described paragraphs (a)(4)(A) through (D).

(6) "respondent"

For purposes of this Rule, the term "respondent" means one or more persons who individually or jointly file an answer to a complaint.

(7) "send"

For purposes of this Rule, the term "send" means to send by first class mail, facsimile, or any other method available and convenient to the parties and the Director.

(b) Composition of Arbitration Panel; Preparation of Lists for Mailing Parties

(1) Composition of Arbitration Panel

(A) Claims of $50,000 or Less

Rule 103

A party may strike one or more of the arbitrators from each list for any reason.

### (B) Ranking—Panel of One Arbitrator

Each party shall rank all of the arbitrators remaining on the list assigning each arbitrator a different, sequential, numerical ranking, with a "1" rank indicating the party's first choice, a "2" indicating the party's second choice, and so on.

### (C) Ranking—Panel of Three Arbitrators

Each party shall rank all of the public arbitrators remaining on the list by assigning each arbitrator a different, sequential, numerical ranking, with a "1" rank indicating the party's first choice, a "2" indicating the party's second choice, and so on. Each party separately shall rank all of the non public arbitrators remaining on the list, using the same procedure.

## (2) Period for Ranking Arbitrators; Failure to Timely Strike and Rank

A party must return to the Director the list or lists with the rankings no later than 20 days after the Director sent the lists to the parties, unless the Director has extended the period. If a party does not timely return the list or lists the Director shall treat the party as having retained all the arbitrators on the list or lists and as having no preferences.

## (3) Process of Consolidating Parties' Rankings

The Director shall prepare one or two consolidated lists of arbitrators, as appropriate under paragraph (b)(2) or (b)(3), based upon the parties' numerical rankings. The arbitrators shall be ranked by adding the rankings of all claimant together and all respondents together, including third-party respondents, to produce separate consolidated rankings of the claimants and the respondents. The Director shall then rank the arbitrators by adding the consolidated rankings of the claimants, the respondents, including third-party respondents, and any other party together, to produce a single consolidated ranking number, excluding arbitrators who were stricken by any party.

## (4) Appointment of Arbitrators

### (A) Appointment of Listed Arbitrators

The Director shall appoint arbitrators to serve on the arbitration panel based on the order of rankings on the consolidated list or lists, subject to availability and disqualification.

### (B) Discretion to Appoint Arbitrators Not on List

If the number of arbitrators available to serve from the consolidated list is not sufficient to fill a panel, the Director shall appoint one or more arbitrators to complete the arbitration panel. Unless the parties agree otherwise, the Director may not appoint a non-public arbitrator under paragraph (a)(4)(B) or (a)(4)(C). The Director shall provide the parties information about the arbitrator as provided in paragraph (b)(6), and the parties shall have the right to object to the arbitrator as provided in paragraph (d)(1).

## (5) Selecting a Chairperson for the Panel

The parties shall have 15 days from the date the Director sends notice of names of the arbitrators to select a chairperson. If the parties cannot agree, Director shall appoint a chairperson from the panel as follows:

(A) The Director shall appoint as the chairperson the public arbitrator who is the most highly ranked by the parties as long as the person is not attorney, accountant, or other professional who has devoted 50% or more his or her professional or business activities, within the last two years

## 10309. Composition of Panels

Except as otherwise specifically provided in Rule 10308, the individuals who shall serve on a particular arbitration panel shall be determined by the Director. Except as otherwise specifically provided in Rule 10308, the Director may name the chairman of the panel.

[Amended by SR-NASD-98-48 eff. Nov. 17, 1998.]

Selected Notices to Members: 98-90

## 10310. Notice of Selection of Arbitrators

(a) The Director shall inform the parties of the arbitrators' names and employment histories for the past 10 years, as well as information disclosed pursuant to Rule 10312, at least 15 business days prior to the date fixed for the first hearing session. A party may make further inquiry of the Director concerning an arbitrator's background. In the event that, prior to the first hearing session, any arbitrator should become disqualified, resign, die, refuse or otherwise be unable to perform as an arbitrator, the Director shall appoint a replacement arbitrator to fill the vacancy on the panel. The Director shall inform the parties as soon as possible of the name and employment history of the replacement arbitrator for the past 10 years, as well as information disclosed pursuant to Rule 10312. A party may make further inquiry of the Director concerning the replacement arbitrator's background and within the time remaining prior to the first hearing session or the 10 day period provided under Rule 10311 whichever is shorter, may exercise its right to challenge the replacement arbitrator as provided in 10311.

(b) This Rule shall not apply to arbitration proceedings that are subject to Rule 10308.

[Amended eff. Sept. 19, 1988; May 10, 1989; amended by SR-NASD-97-34 eff. Aug. 6, 1997; SEC Rel. No. 34-38907 (8/14/97); amended by SR-NASD-98-48 eff. Nov. 17, 1998.]

Selected Notices to Members: 98-90

## 10311. Peremptory Challenge

(a) In an arbitration proceeding, except as provided in Rule 10335, each party shall have the right to one peremptory challenge. In arbitrations where there a multiple Claimants, Respondents, and/or Third-Party Respondents, the Claimant shall have one peremptory challenge, the Respondents shall have one peremptory challenge, and the Third-Party Respondents shall have one peremptory challenge. The Director may in the interests of justice award additional peremptory challenges to a party to an arbitration proceeding. Unless extended by the Director, a party wishing exercise a peremptory challenge must do so by notifying the Director in writing with 10 business days of notification of the identity of the person(s) named under R 10310 or Rule 10321(d) or (e), whichever comes first. There shall be unlimit challenges for cause.

(b) This Rule shall not apply to arbitration proceedings that are subject to R 10308.

[Amended eff. Oct. 1, 1984; amended by SR-NASD-91-49 eff. Jan. 2, 1992; amended by SR-NASD-93-38 eff. Jan. 3, 1996; amended by SR-NASD-97-34, eff. Aug. 6, 1997; SEC Rel. No. 34-38907 (8/14/97); amended by SR-NASD-98-48 eff. Nov. 17, 1998.]

Selected Notices to Members: 98-90.

NASD Manual

**Rule 103**

the Director concerning the replacement arbitrator's background. If the arbitration proceeding is subject to Rule 10308, the party may exercise his or her right to challenge the replacement arbitrator within the time remaining prior to the next scheduled hearing session by notifying the Director in writing of the name of the arbitrator challenged and the basis for such challenge. If the arbitration proceeding is not subject to Rule 10308, within the time remaining prior to the next scheduled hearing session or the 10 day period provided under Rule 10311, whichever is shorter, a party may exercise the party's right to challenge the replacement arbitrator as provided in Rule 10311.

[Amended eff. Sept. 19, 1988; amended by SR-NASD-97-34, eff. Aug. 6, 1997; SEC Rel. No. 34-38907 (8/14/97); amended by SR-NASD-98-48 eff. Nov. 17, 1998.]

Selected Notices to Members:  98-90.

## 10314. Initiation of Proceedings

Except as otherwise provided herein, an arbitration proceeding under this Code shall be instituted as follows:

### (a) Statement of Claim

The Claimant shall file with the Director of Arbitration an executed Submission Agreement, a Statement of Claim of the controversy in dispute, together with the documents in support of the Claim, and the required deposit. Sufficient additional copies of the Submission Agreement and the Statement of Claim and supporting documents shall be provided to the Director of Arbitration for each party and each arbitrator. The Statement of Claim shall specify the relevant facts and the remedies sought. The Director of Arbitration shall endeavor to serve promptly by mail or otherwise on the Respondent(s) one (1) copy of the Submission Agreement and one (1) copy of the Statement of Claim.

### (b) Answer-Defenses, Counterclaims, and/or Cross-Claims

(1) Within 45 calendar days from receipt of the Statement of Claim, Respondent(s) shall serve each party with an executed Submission Agreement and a copy of the Respondent's Answer. Respondent's executed Submission Agreement and Answer shall also be filed with the Director of Arbitration with sufficient additional copies for the arbitrator(s) along with any deposit required under the schedule of fees. The Answer shall specify all available defenses and relevant facts thereto that will be relied upon at the hearing and may set forth any related Counterclaim the Respondent(s) may have against the Claimant, any Cross-Claim the Respondent(s) may have against any other named Respondent(s), and any Third-Party Claim against any other party or person based upon any existing dispute, claim, or controversy subject to arbitration under this Code.

(2)(A) A Respondent, Responding Claimant, Cross-Claimant, Cross-Respondent, or Third-Party Respondent who pleads only a general denial as an Answer may, upon objection by a party, in the discretion of the arbitrators, be barred from presenting any facts or defenses at the time of the hearing.

(B) A Respondent, Responding Claimant, Cross-Claimant, Cross-Respondent, or Third-Party Respondent who fails to specify all available defenses and relevant facts in such party's answer may, upon objection by a party, in the discretion of the arbitrators, be barred from presenting such facts or defenses not included in such party's Answer at the hearing.

(C) A Respondent, Responding Claimant, Cross-Claimant, Cross-Respondent, or Third-Party Respondent who fails to file an Answer within 45 calendar days from receipt of service of a Claim, unless the

(3) The Director of Arbitration shall be authorized to determine preliminarily whether claims filed separately are related and shall be authorized to consolidate such claims for hearing and award purposes.

(4) Further determinations with respect to joinder, consolidation, and multiple parties under this paragraph (d) shall be made by the arbitration panel and shall be deemed final.

[Amended eff. Oct. 1, 1984; July 1, 1986; May 10, 1989; May 7, 1991; amended by SR-NASD-98-07 eff. Mar. 16, 1998.]

## 10315. Designation of Time and Place of Hearing

The Director shall determine the time and place of the first meeting of the arbitration panel and the parties, whether the first meeting is a pre-hearing conference or a hearing, and shall give notice of the time and place at least 15 business days prior to the date fixed for the first meeting by personal service, registered or certified mail to each of the parties unless the parties shall, by their mutual consent, waive the notice provisions under this Rule. The arbitrators shall determine the time and place for all subsequent meetings, whether the meetings are pre-hearing conferences, hearings, or any other type of meetings, and shall give notice as the arbitrators may determine. Attendance at a meeting waives notice thereof.

[Amended eff. May 7, 1991; amended by SR-NASD-98-48 eff. Nov. 17, 1998.]

Selected Notices to Members: 98-90

## 10316. Representation by Counsel

All parties shall have the right to representation by counsel at any stage of the proceedings.

## 10317. Attendance at Hearings

The attendance or presence of all persons at hearings including witnesses shall b determined by the arbitrators. However, all parties to the arbitration and their counse shall be entitled to attend all hearings.

## IM-10317. Closing Arguments

In response to recent questions concerning the order of closing argument : arbitration proceedings conducted under the auspices of the National Association Securities Dealers, Inc., it is the practice in these proceedings to allow claimants proceed first in closing argument, with rebuttal argument being permitted. Claiman may reserve their entire closing for rebuttal. The hearing procedures may, however, varied in the discretion of the arbitrators, provided all parties are allowed a full a: fair opportunity to present their respective cases.

## 10318. Failure to Appear

If any of the parties, after due notice, fails to appear at a hearing or at a continuation of a hearing session, the arbitrators may, in their discretion, proceed w the arbitration of the controversy. In such cases, all awards shall be rendered as if e: party had entered an appearance in the matter submitted.

[Amended eff. Jan. 8, 1992.]

## 10319. Adjournments

(a) The arbitrator(s) may, in their discretion, adjourn any hearing(s) either u their own initiative or upon the request of any party to the arbitration.

(b) If an adjournment requested by a party is granted after arbitrators have l appointed, the party requesting an adjournment shall pay a fee equal to the in deposit of hearing session fees for the first adjournment and twice the initial depos hearing session fees, not to exceed $1,500, for a second or subsequent adjourni requested by that party. If the adjournment is not granted, the deposit sha!

and appoint a person to preside. The pre-hearing conference may be held by telephone conference call. The presiding person shall seek to achieve agreement among the parties on any issue which relates to the pre-hearing process or to the hearing, including but not limited to exchange of information, exchange or production of documents, identification of witnesses, identification and exchange of hearing documents, stipulation of facts, identification and briefing of contested issues, and any other matters which will expedite the arbitration proceedings.

(2) Any issues raised at the pre-hearing conference that are not resolved may be referred to a single member of the arbitration panel for decision.

### (e) Decisions by Selected Arbitrator

The Director of Arbitration may appoint a single member of the arbitration panel to decide all unresolved issues under this Rule. In matters involving public customers, such single arbitrator shall be a public arbitrator, except that the arbitrator may be either public or industry when the public customer has requested a panel consisting of a majority from the securities industry. Such arbitrator shall be authorized to act on behalf of the panel to issue subpoenas, direct appearances of witnesses and production of documents, set deadlines for compliance, and issue any other ruling which will expedite the arbitration proceedings. Decisions under this Rule shall be made upon the papers submitted by the parties, unless the arbitrator calls a hearing. The arbitrator may elect to refer any issue under this Rule to the full panel.

[Amended eff. May 10, 1989; amended by SR-NASD-95-05 eff. Mar. 23, 1995; amended by SR-NASD-98-91 eff. Jan. 11, 1999.]

## 10322. Subpoenas and Power to Direct Appearances

### (a) Subpoenas

The arbitrators and any counsel of record to the proceeding shall have the power of the subpoena process as provided by law. All parties shall be given a copy of a subpoena upon its issuance. Parties shall produce witnesses and present proofs to the fullest extent possible without resort to the subpoena process.

### (b) Power to Direct Appearances and Production of Documents

The arbitrator(s) shall be empowered without resort to the subpoena process to direct the appearance of any person employed or associated with any member of the Association and/or the production of any records in the possession or control of such persons or members. Unless the arbitrator(s) direct otherwise, the party requesting the appearance of a person or the production of documents under this Rule shall bear all reasonable costs of such appearance and/or production.

[Amended eff. May 10, 1989.]

## 10323. Evidence

The arbitrators shall determine the materiality and relevance of any evidence proffered and shall not be bound by rules governing the admissibility of evidence.

## 10324. Interpretation of Provisions of Code and Enforcement of Arbitrator Rulings

The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

[Amended eff. Nov. 16, 1992.]

**Rule 10324**

Director may use include, but are not limited to, registered or certified mail, hand delivery, and facsimile or other electronic transmission.

(d) The arbitrator(s) shall endeavor to render an award within thirty (30) business days from the date the record is closed.

(e) The award shall contain the names of the parties, the name of counsel, if any, a summary of the issues, including the type(s) of any security or product, in controversy, the damages and other relief requested, the damages and other relief awarded, .a statement of any other issues resolved, the names of the arbitrators, the dates the claim was filed and the award rendered, the number and dates of hearing sessions, the location of the hearings, and the signatures of the arbitrators concurring in the award.

(f) All awards and their contents shall be made publicly available.

(g) Fees and assessments imposed by the arbitrators under Rules 10205 and 10332 shall be paid immediately upon the receipt of the award by the parties. Payment of such fees shall not be deemed ratification of the award by the parties.

(h) All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award: (1) if not paid within thirty (30) days of receipt, (2) if the award is the subject of a motion to vacate which is denied, or (3) as specified by the arbitrator(s) in the award. Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

[Amended eff. May 10, 1989; amended by SR-NASD-91-09 eff. Apr. 26, 1991; amended by SR-NASD-90-62 eff. May 7, 1991; amended by SR-NASD-91-49 eff. Jan. 2, 1992; amended eff. Oct. 1, 1993; amended by SR-NASD-97-34, eff. Aug. 6, 1997; SEC Rel. No. 34-38907 (8/14/97).]

Selected Notices to Members: 93-37, 93-63, 94-54.

**[The next page is 7601.]**

## 10331. Incorporation By Reference

This Code shall be deemed a part of and incorporated by reference in every agreement to arbitrate under the Rules of the Association including a duly executed Submission Agreement.

[Amended eff. May 7, 1991.]

## 10332. Schedule of Fees for Customer Disputes

(a) At the time of filing a Claim, Counterclaim, Third-Party Claim or Cross-Claim, a party shall pay a non-refundable filing fee and shall remit a hearing session deposit to the Association in the amounts indicated in the schedules below unless such fee or deposit is specifically waived by the Director of Arbitration.

Where multiple hearing sessions are required, the arbitrators may require any of the parties to make additional hearing deposits for each additional hearing session. In no event shall the amount deposited by all parties per hearing session exceed the amount of the largest initial hearing deposit made by any party under the schedules below.

(b) A hearing session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with an arbitrator, which lasts four (4) hours or less. The forum fee for a pre-hearing conference with an arbitrator shall be the amount set forth in the schedules below as a hearing session deposit for a hearing with a single arbitrator.

(c) The arbitrators, in their awards, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees. Forum fees chargeable to the parties shall be assessed on a per hearing session basis, and the aggregate for each hearing session may equal but shall not exceed the amount of the largest initial hearing deposit deposited by any party, except in a case where claims have been joined subsequent to filing in which case hearing session fees shall be computed as provided in paragraph (d). The arbitrator(s) may determine in the award that a party shall reimburse to another party any non-refundable filing fee it has paid. If a customer is assessed forum fees in connection with an industry claim, forum fees assessed against the customer shall be based on the hearing deposit required under the industry claims schedule for the amount awarded to industry parties to be paid by the customer and not based on the size of the industry claim. No fees shall be assessed against a customer in connection with an industry claim that is dismissed; however, in cases where there is also a customer claim, the customer may be assessed forum fees based on the customer claim under the procedure set out above. Amounts deposited by a party shall be applied against forum fees, if any. In addition to forum fees, the arbitrator(s) may determine in the award the amount of costs incurred pursuant to Rules 10319, 10321, 10322, and 10326 and, unless applicable law directs otherwise, other costs and expenses of the parties and arbitrator(s) which are within the scope of the agreement of the parties. The arbitrator(s) shall determine by whom such costs shall be borne. If the hearing session fees are not assessed against a party who had made a hearing deposit, the hearing deposit will be refunded unless the arbitrators determine otherwise.

(d) For claims filed separately which are subsequently joined or consolidated under Rule 10314(d), the hearing deposit and forum fees assessable per hearing session after joinder or consolidation shall be based on the cumulative amount in dispute. The arbitrator(s) shall determine by whom such fees shall be borne.

(e) If the dispute, claim, or controversy does not involve, disclose, or specify a money claim, the non-refundable filing fee for a public customer shall be $250 and the non-refundable filing fee for an industry party shall be $500. The hearing session deposit to be remitted by a party shall be $1000 or such greater or lesser amount as the

### Customer or Associated Person Claimant

| Deposit for Amount in Dispute (Exclusive of Interest and Expenses) | Claim Filing Fee | Deposit for Cases to be Decided on the Paper Record | Hearing Session Deposit One Arbitrator[1] | Three Arbitrators[2] |
|---|---|---|---|---|
| $.01-$1,000 | $25 | $25 | $25 | NA |
| $1000.01-$2,500 | $25 | $50 | $50 | NA |
| $2,500.01-$5,000 | $50 | $125 | $125 | NA |
| $5,000.01-$10,000 | $75 | $250 | $250 | NA |
| $10,000.01-$25,000 | $125 | $300 | $450 | NA |
| $25,000.01-$30,000 | $150 | NA | $450 | $600 |
| $30,000.01-$50,000 | $175 | NA | $450 | $600 |
| $50,000.01-$100,000 | $225 | NA | $450[3] | $750 |
| $100,000.01-$500,000 | $300 | NA | $450[3] | $1,125 |
| $500,000.01-$1,000,000 | $375 | NA | $450[3] | $1,200 |
| $1,000,000.01-$3,000,000 | $500 | NA | $450[3] | $1,200 |
| $3,000,000.01-$5,000,000 | $600 | NA | $450[3] | $1,200 |
| $5,000,000.01-$10,000,000 | $600 | NA | $450[3] | $1,200 |
| Over $10,000,000 | $600 | NA | $450[3] | $1,200 |

[1] The dispute is resolved by one arbitrator per hearing session, including pre-hearing conferences.

[2] The dispute is resolved by three arbitrators per hearing session.

[3] Fee applies only to pre-hearing conferences with a single arbitrator.

**Rule 10332**

[Amended eff. Oct. 1, 1984; July 1, 1987; Apr. 1, 1988; May 10, 1989; June 1, 1990; amended by SR-NASD-90-03 eff. June 18, 1990; amended by SR-NASD-94-75 eff. Jan. 1, 1995; amended by SR-NASD-94-10 eff. May 2, 1995; amended by SR-NASD-95-25 eff. Aug. 1, 1995; amended by SR-NASD-97-79 eff. March 18, 1999; amended by SR-NASD-99-23 eff. March 18, 1999; amended by SR-NASD-00-11 eff. November 1, 2000; amended by SR-NASD-00-65 eff. Dec. 31, 2000.]

Selected Notices to Members: 99-23.

## 10333. Member Surcharge and Process Fees

(a) Member Surcharge

(1) Each member who is named as a party to an arbitration proceeding, whether in a Claim, Counterclaim, Cross-Claim or Third-Party Claim, shall be assessed a non-refundable surcharge pursuant to the schedule below when the Director of Arbitration perfects service of the claim naming the member on any party to the proceeding.

(2) For each associated person who is named, the surcharge shall be assessed against the member or members that employed the associated person at the time of the events which gave rise to the dispute, claim or controversy. No member shall be assessed more than a single surcharge in any arbitration proceeding.

(3) The surcharge shall not be subject to reimbursement chargeable to any other party under Rules 10332(c) and 10205(c) of the Code.

| Amount in Dispute | Surcharge | | |
|---|---|---|---|
| $.01 - $2,500 | $150 | $50,000.01 - $100,000 | $1,100 |
| $2,500.01 - $5,000 | $200 | $100,00.01 - $500,000 | $1,700 |
| $5,000.01 - $10,000 | $325 | $500,000.01 - $1,000,000 | $2,250 |
| $10,000.01 - $25,000 | $425 | $1,000,000.01 - $5,000,000 | $2,800 |
| $25,000.01 - $30,000 | $600 | $5,000,000.01 - $10,000,000 | $3,350 |
| $30,000.01 - $50,000 | $875 | Over $10,000,000 | $3,750 |

(4) For purposes of this Rule, service is perfected when the Director of Arbitration properly serves the Respondents to such proceeding under Rule of the Code.

(5) If the dispute, claim, or controversy does not involve, disclose, or specify a money claim, the non-refundable surcharge shall be $1,500 or such greater or lesser amount as the Director of Arbitration or the panel of arbitrators may require, but shall not exceed the maximum amount specified in the schedule.

(b) Prehearing and Hearing Process Fees

(1) Each member that is a party to an arbitration proceeding in which more than $25,000 is in dispute will pay;

(A) a non-refundable prehearing process fee of $750, due at the time the parties are sent arbitrator lists in accordance with Rule 10308(b)(5); and

(B) a non-refundable hearing process fee, due when the parties are notified of the date and location of the first hearing session, as set forth in the schedule below.

(2) If an associated person of a member is a party, the member that employed the associated person at the time of the events which gave rise to the dispute, claim or controversy will be charged the process fees, even if the member is not a party. No member shall be assessed more than one prehearing and one hearing process fee in any arbitration proceeding.

(3) The prehearing and hearing process fees shall not be chargeable to any other party under Rules 10332(c) and 10205(c) of the Code.

Following the appointment of the last arbitrator pursuant to either a procedure agreed upon by the parties or pursuant to the procedure specified under paragraph (c)(3), the withdrawal or disqualification of an arbitrator shall not reopen consideration of the terms of such agreement unless such reconsideration is ordered by the remaining arbitrators.

(4) Unless waived in whole or part by the Director of Arbitration, the parties to an eligible matter shall pay the arbitrator fees, hearing session deposits and any other fees and deposits required pursuant to the Code prior to the commencement of the first or the next hearing session before the arbitrators, as applicable. Unless apportioned by the arbitrators, 50 percent of all other fees and charges assessed on the parties following the payment of the hearing session deposit specified in Rule 10205 or 10332 shall be paid by the Claimants (apportioned equally among all Claimants) and 50 percent shall be paid by the Respondents (apportioned equally among all Respondents). The arbitrators shall, in their award, determine the party or parties responsible for arbitrator or forum fees and may direct the return of monies previously deposited by a party. The waiver of the deposit requirement shall not preclude the assessment of forum fees against a party in the award. If an agreement to proceed under this Rule is cancelled, or the parties otherwise settle or abandon the proceeding after agreeing to arbitrate under this Rule, the parties shall not be entitled to a refund of any fees or charges paid.

### (b) Administrative Conference

The Director of Arbitration shall designate a member of the Arbitration Department staff to conduct an Administrative Conference of the parties to an eligible matter. The Administrative Conference may be conducted in person or by telephone conference at the discretion of the Director of Arbitration. The purposes of the Administrative Conference include, but are not limited to:

(1) obtaining additional information about the nature of and amount in dispute;

(2) determining the anticipated length of hearing and other scheduling issues;

(3) determining the preferences of the parties with respect to the qualifications of arbitrators;

(4) considering whether mediation or another non-adjudicative method of dispute resolution would be of interest to the parties in resolving the dispute;

(5) determining what discovery is sought by the parties and setting a schedule to complete discovery and to resolve discovery or other procedural disputes;

(6) considering the schedule, arrangements, form and scope of any depositions or interrogatories sought;

(7) determining a schedule for settlement discussions and the method for certifying to the Association that settlement discussions occurred;

(8) developing a statement of (A) the matters in dispute, (B) the positions of each party on the matters in dispute, and (C) the legal authorities related to the matters in dispute to be brought to the attention of the arbitrators;

(9) developing a schedule for: (A) identifying witnesses, including experts (and with respect to experts, arranging for the production of resumes and summaries of anticipated testimony, including any testimony on calculating damages), and (B) determining the availability of such witnesses for hearings; and

(10) determining the form of the hearing record, and, if transcribed, any arrangements for payment by the parties for transcription and transmission of copies to the arbitrators.

### (c) Appointment of Arbitrators

**Rule 10334**

compensation shall be paid to the arbitrators by the parties in addition to the honorarium specified by the Board of Governors. The amount of any compensation to be paid to the arbitrators by the parties will be decided before the arbitrators are selected. The parties shall deposit any additional compensation agreed or ordered to be paid with the Association no later than 10 days prior to the first hearing. Such additional compensation shall be assessed and paid pro rata on the basis of the number of parties. The arbitrators may assess any additional compensation paid pursuant to this subsection against any or all of the parties as part of the final award.

### (d) Preliminary Hearing

As promptly as practicable after the selection of the arbitrators, the arbitrators shall convene a preliminary hearing of the parties or their representatives, either in person or by telephone conference. The Director of Arbitration shall appoint one member of the panel to preside over the preliminary hearing and, with respect to any matter arising before or after the preliminary hearing, to act on behalf of the panel. Matters that may be considered at the preliminary hearing include, but are not limited to:

    (1) stipulations to any uncontested facts;

    (2) exchange and pre-marking of exhibits or evidence that each party believes may be offered at the hearing;

    (3) the schedule, form, scope and use of any sworn statements and/or depositions;

    (4) whether mediation or another non-adjudicative method of dispute resolution would be of interest to the parties in resolving the dispute; and

    (5) issues which are or will be ripe for prehearing resolution.

Nothing in this paragraph, however, shall prevent the arbitrator conducting a preliminary hearing from referring any matter to the full panel for consideration.

### (e) Notice of Settlement Discussions

If an eligible matter is not settled prior to the first hearing date, the parties shall submit a joint statement or individual statements to the arbitrators setting forth the date(s) and duration of settlement discussions, and the fact that such settlement discussion did not result in settlement. Such statements shall not disclose the dollar value of any settlement offer or proposal discussed by the parties.

### (f) Management of Proceedings

    (1) Arbitrators are authorized to take such actions and issue such rulings as are necessary or desirable consistent with the objective of a just, speedy and cost-effective resolution of an eligible matter.

    (2) Arbitrators are authorized to order, at the request of a party, the deposition of, or the propounding of interrogatories to, persons who may possess information relevant to the disposition of an eligible matter and who may not be available to testify at the hearings. Unless otherwise agreed to by the parties, depositions or interrogatories shall be limited to determining and preserving testimony and facts relevant to the determination of the matter, not for conducting discovery. Unless otherwise agreed to by the parties, interrogatories shall be limited to twenty (20) questions, including parts and subparts. Arbitrators are authorized to order audio/video depositions or audio/video site review.

    (3) Arbitrators are authorized to conduct special proceedings as necessary (either through a hearing or on the written submissions of the parties, at the discretion of the arbitrators) to rule on dispositive motions, such as motions for summary judgement as to liability or damages or the applicability of a statute of limitations.

(B) The filing of a response to an application for an Immediate Injunctive Order is optional to the party against whom the immediate order is sought. Any response shall be served on the applicant. If a response is submitted, the responding party shall, prior to the hearing or at the hearing, file with the Director two copies of the response and proof of service on all parties.

(C) Notice of the date, time and place of the hearing; the name and employment history of the single arbitrator required by Rule 10310; and any information required to be disclosed by the arbitrator pursuant to Rule 10312 shall be provided to all parties via telephone, facsimile transmission or messenger delivery prior to the hearing.

(D) The hearing on the application for an Immediate Injunctive Order may be held, at the discretion of the arbitrator or the Director, by telephone or in person in a city designated by the Director of Arbitration.

(E) The arbitrator shall endeavor to grant or deny the application within one business day after the hearing and record are closed.

(F) If the application is granted, the arbitrator shall determine the duration of the Immediate Injunctive Order. Unless the parties agree otherwise, however, the order will expire no later than the earlier of the issuance or denial of a Regular Injunctive Order under subparagraph (2) or a decision on the merits of the entire controversy by an arbitration panel appointed under this Code.

(2) Regular Injunctive Orders.

(A) Upon receipt of an application for a Regular Injunctive Order, the Director shall endeavor to schedule a hearing no sooner than three and no later than five business days after the response is filed or due to be filed, whichever comes first.

(B) The party against which a Regular Injunctive Order is sought shall serve a response on the applicant within three business days of receipt of the application. The responding party shall simultaneously and in the same manner file with the Director two copies of the response and proof of service on all parties. Failure to file a response within the specified time period shall not be grounds for delaying the hearing, nor shall it bar the respondent from presenting evidence at the hearing.

(C) Notice of the date, time and place of the hearing; the name and employment history of the single arbitrator required by Rule 10310; and any information required to be disclosed by the arbitrator pursuant to Rule 10312 shall be provided to all parties via telephone, facsimile transmission or messenger delivery prior to the hearing.

(D) The hearing on the application for a Regular Injunctive Order may be held, at the discretion of the arbitrator or the Director, by telephone or in person in a city designated by the Director of Arbitration.

(E) The arbitrator shall endeavor to grant or deny the application within one business day after the hearing and record are closed.

(F) If the application is granted, the arbitrator shall determine the duration of the Regular Injunctive Order. Unless the parties agree otherwise, however, a Regular Injunctive Order shall expire no later than

**Rule 10335**

(1) Claims arising between a customer and an associated person or a member for amounts from $50,000.01 to $200,000, including damages, interest, costs, and attorneys' fees, will be eligible to be heard by a single arbitrator pursuant to this Rule ("Pilot Program"), except as provided in paragraph (a)(2) or (b)(3) below.

(2) Claims that include a request for punitive damages will not be eligible for the Pilot Program unless all parties agree.

**(b) Arbitrator Selection Procedure**

(1) After parties receive notice that a panel of three arbitrators has been selected for their case, as provided in Rule 10308, the parties may agree to have one of the arbitrators serve as the single arbitrator who will hear their case.

(2) The parties shall have 15 days from the date the Director sends notice of the names of the arbitrators to agree on a single arbitrator. This 15-day period will run concurrently with the time period to select a chairperson under Rule 10308(c)(5).

(3) If the parties do not agree to have one of the arbitrators serve as the single arbitrator, then the claim will not be eligible for the Pilot Program and will proceed instead under the usual procedures of Rule 10308.

**(c) Communications with Arbitrators**

(1) Parties may send written materials, including information requests and motions, directly to the single arbitrator, provided that copies of such materials are sent simultaneously and in the same manner to all parties and to the Director. Parties shall send the Director, arbitrator, and all parties proof of service of such written materials, indicating the time, date, and manner of service upon the arbitrator and all parties. Service by mail is complete upon mailing. If the arbitrator and all parties agree, written materials may be served electronically.

(2) If the arbitrator agrees, parties may initiate conference calls with the arbitrator, provided that all parties are on the line before the arbitrator joins the call. At the discretion of the arbitrator, such conference calls may be tape recorded.

(3) The arbitrator may initiate conference calls with the parties, provided all parties are on the line before the conference begins. At the discretion of the arbitrator, such conference calls may be tape recorded.

(4) Parties may not communicate orally with the arbitrator unless all parties are present.

**(d) Fees**

(1) Filing fees, member surcharges, and process fees for the Pilot Program will be the same as in Rules 10332 and 10333.

(2) Hearing session deposits for the Pilot Program are as follows:

(A) Hearing session deposits for claims of $50,000.01 to $100,000 will be $550 per session.

(B) Hearing session deposits for claims of $100,000.01 to $200,000 will be $750 per session.

(C) The forum fee for a telephone pre-hearing conference call with the arbitrator will be $450.

**(e) Awards**

The single arbitrator may not award the parties more than a total of $200,000, including damages, interest, costs, and attorneys' fees, unless all

## 10400. MEDIATION RULES

### 10401. Scope and Authority

(a) The NASD Mediation Procedures ("Procedures") set forth in this Rule 10400 Series shall apply to the mediation of any dispute, claim or controversy ("matter") administered by the Association.

(b) A Director of Mediation shall be designated by the NASD Dispute Resolution Board to administer mediations under these Procedures. The Director will consult the National Arbitration and Mediation Committee on the administration of mediations and the Committee shall, as necessary, make recommendations to the Director of Arbitration and recommend to the NASD Dispute Resolution Board amendments to the Procedures. The duties and functions of the Director may be delegated by the Director, as appropriate. For purposes of this Rule 10400 Series, the term "Director" refers to the Director of Mediation.

(c) Neither the Association nor any mediator appointed to mediate a matter pursuant to these Procedures shall have any authority to compel a party to participate in a mediation or to settle a matter.

[Adopted by SR-NASD-95-25 eff. Aug. 1, 1995; amended by SR-NASD-98-48 eff. Nov. 17, 1998; amended by SR-NASD-99-21 eff. July 9, 2000.]

### 10402. Submission of Eligible Matters

Any matter eligible for arbitration under this Code, any part thereof, or any issue related to the matter, including procedural issues, may be submitted for mediation under these Procedures upon the agreement of all parties. A matter will be deemed submitted when the Director has received an executed Submission Agreement from each party. The Director shall have the sole authority to determine if a matter is eligible to be submitted for mediation.

[Adopted by SR-NASD-95-25 eff. Aug. 1, 1995.]

### 10403. Arbitration Proceedings

(a) Unless the parties agree otherwise, the submission of a matter for mediation shall not stay or otherwise delay the arbitration of a matter pending under this Code. When all parties agree to stay the arbitration in order to mediate the claim, the arbitration proceeding shall be stayed, notwithstanding any provision to the contrary in this Code.

(b) If mediation is conducted through NASD Dispute Resolution, Inc., no adjournment fees will be charged for staying the arbitration proceeding in order to mediate.

[Adopted by SR-NASD-95-25 eff. Aug. 1, 1995; amended by SR-NASD-00-11 eff. November 1, 2000.]

### 10404. Mediator Selection

(a) A mediator may be selected: (1) by the parties from a list supplied by the Director; (2) by the parties from a list or other source of their own choosing; or (3) by the Director if the parties do not act to select a mediator after submitting a matter to mediation.

(b) With respect to any mediator assigned or selected from a list provided by the Association, the parties will be provided with information relating to the mediator's employment, education, and professional background, as well as information on the mediator's experience, training, and credentials as a mediator. Any mediator selected or assigned to mediate a matter shall comply with the provisions of Rule 10312(a), (b) and (c), unless, with respect to a mediator selected from a source other than the Association's lists, the parties elect to waive such disclosure.

(c) No mediator shall be permitted to serve as an arbitrator of any matter pending in Association arbitration in which he served as a mediator, nor shall the mediator be

(3) The mediator will not transmit or otherwise disclose confidential information provided by one party to any other party unless authorized to do so by the party providing the confidential information.

[Adopted by SR-NASD-95-25 eff. Aug. 1, 1995.]

Selected Notices to Members: 95-62.

## Rule 10407. Mediation Fees

### (a) Filing Fees: Cases Filed Directly in Mediation

Each party to a matter submitted directly to a mediation administered by the Association shall pay an administrative fee to the Association in the amounts indicated in the schedule below, unless such fee is specifically waived by the Director of Mediation.

| Amount in Controversy | Customer and Associated Person Fee | Member Fee | Total Fees |
|---|---|---|---|
| $.01-$25,000 | $ 50 | $150 | $200 |
| $25,000.01-$100,000 | $150 | $300 | $450 |
| Over $100,000 | $300 | $500 | $800 |

### (b) Filing Fees: Cases Initially Filed in Arbitration

When a matter is initially filed in arbitration and subsequently submitted to a mediation administered by the Association, each party shall pay an administrative fee to the Association in the amounts indicated in the schedule below, unless such fee is specifically waived by the Director of Mediation.

| Amount in Controversy | Customer and Associated Person Fee | Member Fee | Total Fees |
|---|---|---|---|
| $.01-$25,000 | $ 0 | $ 0 | $ 0 |
| $25,000.01-$100,000 | $100 | $150 | $250 |
| Over $100,000 | $250 | $500 | $750 |

### (c) Mediator Fees and Expenses

The parties to a mediation administered by the Association shall pay all of the mediator's charges, including the mediator's travel and other expenses. The charges shall be specified in the Submission Agreement and shall be apportioned equally among the parties unless they agree otherwise. Each party shall deposit with the Association its proportional share of the anticipated mediator charges and expenses, as determined by the Director of Mediation, prior to the first mediation session.

[Adopted by SR-NASD-00-11 eff. November 1, 2000.]

[The next page is 7701.]

2

# INTRADOS, S.A.
# TRUST AGREEMENT

The Settlor hereby directs the Trustees hereunder to hold, manage and distribute the Trust Fund for the uses and purposes and upon the terms and conditions hereinafter set forth. The Trustees hereby acknowledge the receipt of the Trust Fund and that said Trust Fund as well as all additions shall be held in trust as provided in this Agreement. This Agreement is irrevocable. This Agreement may be referred to as "Trust # _22500_ ."

## 1. DEFINITIONS.

1.1    **Settlor.** The "Settlor" means the Person executing this Agreement as Settlor.

1.2    **Trustees.** The Trustees mean INTRADOS, S.A., a company incorporated under the laws of the Republic of Panama, or its successor.

1.3    **Trust Fund.** The "Trust Fund" means:

   i)    The initial funds received from the Settlor, the receipt of which the Trustees acknowledge;

   ii)    Any additional assets added to the Trust Fund at the time of Agreement    or by way of further agreement (whether by the Settlor or by any other Person), accumulation of income, capital accretion or otherwise; and

   iii)    All assets from the time representing assets referred to in i) and ii) above.

1.4    **Discretionary Period.** The "Discretionary Period" means the period beginning with the date of this Agreement and ending on the first to happen of the following events:

   i)    the death of the survivor of the Principal Beneficiary and his or her spouse, if any;

   ii)    the expiration of 20 years after the death of the last survivor of the issue    living at the date of this Agreement of His late Majesty King George the Fifth of the United Kingdom;

   iii)    such earlier date as the Trustees shall declare in writing to be date on   which the Discretionary Period shall end (not being a date earlier than the date of such declaration).

1.5    **Person.** "Person" means any individual, corporation (wherever incorporated) or other legal entity.

1.6    **Beneficiaries.** Unless otherwise provided in attached Schedule A, the "Beneficiaries" mean:

   i)    The Persons or the class of Persons designated as Principal Beneficiary    in this Agreement; and if none then,

ii)     The spouse of the principal Beneficiary, if any; and if none,

iii)    The children and remoter issue (lineal descendants) of the Principal
        Beneficiary, per stirpes, if any; and if none,

iv)     Any Person appointed by the Trustees in writing to be an additional
        Beneficiary under this Agreement, if any; and if none,

v)      The charity, if any, designated in this Agreement as a Beneficiary; and
        if   none,

vi)     If any time there is no Person, corporation, or other entity entitled to received
        all or any part of the Settlor's trust property:

        a.    If a joint trust, then one-half of the trust property shall be distributed to
              those Persons who would be the Settlor's heirs had he/she died intestate
              owning such property.  The balance of the property shall be distributed to
              those Persons who would be the Settlor's spouse's heirs, had the Settlor's
              spouse died intestate owning such property.

        b.    If this is a sole Settlor trust, then the trust property shall be distributed to
              those Persons who would be the Settlor's heirs had he/she died intestate
              owning such property.

The distribution of trust property, for purposes of this Paragraph 1.6 vi), shall be
determined by the laws of descent and distribution for intestate estates, in the
jurisdiction in which the Settlor resides on the date of the Settlor's death, as such laws
are in effect at the time of any distribution under this Paragraph 1.6 vi).

1.7     **Number and Gender.**  The singular includes the plural and vice versa.  The
        masculine includes the feminine and vice versa and each includes the neuter.

## 2.   INCOME AND CAPITAL.

2.1     **Powers.**  The trustees shall during the Discretionary period have the following powers
        of dealing with the capital and income of the Trust Fund, which they may exercise
        from time to time in their absolute discretion.

        i) The Trustees may pay or apply the whole or any part of the income to or in any
           manner which is in their opinion for the benefit of all or any one or more of the
           Beneficiaries;

        ii) The Trustees may paid or apply the whole or any part of the capital to or in any
            manner which is in their opinion for the benefit of all or any one or more of the
            Beneficiaries;

        iii) In the exercise of the power in i) or ii) above, the Trustees may transfer the whole
             or any part of the capital and income to another agreement created either by the
             Trustees or by any other Person in any part of the world upon the following:

b. The power granted in this Paragraph iii) is expressly overridden by some appointment made by the Trustees under the provisions of this Agreement.

## 4. POWERS TO ADMINISTER TRUST FUND.

In the management and administration of the Trust Fund for the benefit of the Beneficiaries the Trustees shall have the widest powers of investing, disposing of and dealing with the Trust Fund and of carrying out any transaction whatever in connection with the Trust Fund which are lawfully capable of being conferred on the Trustees, to the same effect as if such powers were expressly conferred by this Agreement; and the Trustees may exercise or omit to exercise all or any of such powers in their absolute and uncontrolled discretion as if they were the absolute beneficial owners of the Trust Fund.

## 5. POWERS TO DELEGATE.

The Trustees (or any of the Trustees if there are more than one) may delegate to any Person (including if thought fit any other Trustee) at any time and for any period in any manner and upon any terms all or any of the trusts, powers, duties, and discretions imposed or conferred upon the Trustees by this Agreement or by law without being liable for the acts or default of any delegate.

## 6. POWERS TO APPOINT TRUST ADVISOR.

The Settlor, in his/her lifetime or after his/her death, by the Person who may for the time being have power to appoint new Trustees, may from time to time appoint advisors (which may include the Settlor or Beneficiaries) to the Trustees in the form of a "Trust Advisor" or as an "Advisory Committee". An Advisory Committee shall have no binding or plenary authority over the Trustees to implement its advice. An Advisory Committee may relate its advice and its wishes as to any function of the Trustees including but not limited to, the termination of this Agreement as provided in this Agreement, and the exercise of Trustees Powers, including investment matters concerning the capital and income of this Agreement, or any other duty.

### 6.1 Appointment of Successor Trust Advisors by Trust Advisor.

i) Immediately upon accepting appointment, the Trust Advisor may nominate, in writing, a Person to act as the Successor Trust Advisor. Thereafter, if the Trust Advisor shall, for any reason, cease to be the Trust Advisor, then the Person who is named as the Successor Trust Advisor shall (subject to any appointment to the contrary made by the Settlor under Paragraph 6.1, hereof) forthwith be and become the new Trust Advisor in the place of the Trust Advisor. The Trust Advisor shall give a copy of such nomination to the Settlor (if then living) and the Trustees promptly after its execution.

ii) The Trust Advisor may withdraw, replace, or modify the nomination of the Successor Trust Advisor, pursuant to Paragraph 6.1, at any time before the time that the Trust Advisor ceases to be the Trust Advisor.

### 6.2 Appointment of Trust Advisor by Settlor. The Settlor shall have the power, by written instrument, to:

    i) Appoint additional Trust Advisor to form an Advisory Committee;

    ii) Appoint Successor Trust Advisor; and

    iii) Remove the Trust Advisor or Advisory Committee for the time being.

6.3    **More than One Trust Advisor.** If more than one Trust Advisor is in office at any time, such Advisory Committee shall act jointly, and any reference to the Trust Advisor shall be read to include reference to the Advisory Committees as the case may be.

6.4    **Lack of Trust Advisor or Successor Trust Advisor.** If there is no Trust Advisor in office and no Successor Trust Advisor has been nominated by either the Trust Advisor previously in office or the Settlor, then the Trustees shall have the power by deed to appoint any Person who is not a Trustee to be the Trust Advisor.

6.5    **Resignation of Trust Advisor.** The Trust Advisor may resign as Trust Advisor by giving notice thereof in writing to the Trustees.  After the expiration of thirty (30) days from the date that the Trust Advisor gives such notice of resignation (or such shorter period as may be agreed in writing between the Trust Advisor and the Trustees), the Trust Advisor who has given such notice shall cease to be the Trust Advisor.

6.6    **Cessation as Trust Advisor.** The Trust Advisor shall immediately cease to be the    Trust Advisor of this Agreement if any of the following occurs:

    i) The Trust Advisor dies (or if the Trust Advisor is a company, and such company is dissolved);

    ii) The Trust Advisor resigns, pursuant to Paragraph 6.5, of this Agreement;

    iii) The Trust Advisor becomes of unsound mind or otherwise becomes unable to fulfill the office of the Trust Advisor; or

    iv) The Trust Advisor, in the sole opinion of the Trustee, is acting under duress or compulsion of a court, tribunal, or governmental agency.

6.7    **Effect of Vacant Office of Trust Advisor.** If there shall at any time be no Trust Advisor, then this Agreement shall, during such time as there shall be no Trust Advisor (but no further or otherwise), be read and construed as if all references to the Trust Advisor were omitted from this Agreement.

6.8    **Trust Advisor's Request for Information and Accounts.** Besides the powers that this Agreement specifically confers upon the Trust Advisor, the Trust Advisor shall have the power to request information concerning any of the following, which the Trustees shall supply to the Trust Advisor within a reasonable period of time:

    i) The state of the Trust Fund;

    ii) The assets contained within the Trust Fund; and

    iii) The account contained in the trust.

6.9 **Disclosure of Information to Parties Other than the Trust Advisor.** The Trustee may disclose only the following information with the written consent of the Settlor or the Trust Advisor:

   i) The state of the Trust Fund;

   ii) The assets contained within the Trust Fund; and

   iii) The accounts for the Trust Fund.

6.10 **Trust Advisor's Liability And Indemnity.**

   i) The Trust Advisor shall not owe any fiduciary duty toward, and shall not be accountable to : (1) any Person or Persons from time to time interested hereunder or to (2) the Trustees for any act of omission or commission of the Trust Advisor in relation to the powers given to the Trust Advisor by this Agreement. The Settlor intends that the Trust Advisor (in the absence of fraud or dishonesty) shall be free from any liability whatsoever in relation to his or its power.

   ii) The Trust Advisor shall be wholly indemnified and held harmless out of the Trust Fund from any losses, damages, or judgment debt arising out of any action or suit in a court of law based upon or in connection with the Trust Advisor's powers or duties under this Agreement.

# 7. POWERS OF INVESTMENT.

7.1 **Investment Power.** The Trustees shall posses the power to invest in any real or personal property ("Investment Power"), including without limitation, investment in:

   i) Any currency

   ii) Any part of the world;

   iii) The purchase of, or upon the security of, such stocks, shares, mutual fund shares, unit trust units, or other securities or commodities (including precious metals), bonds, notes, debentures, certificates of deposit or time deposits, land, or other investments or property of whatsoever nature.

7.2 **Income-Producing Investments Not Required.** The Trustees may exercise the Investment Power granted in this Paragraph 7 without regard to whether the property invested in is income-producing or pays dividends or interest.

7.3 **Investment May Involve Liabilities or Be Depreciating.** The Trustees may exercise the Investment Power granted in this Paragraph 7 without regard to whether such investments:

   i) Involve liabilities;

   ii) Are of a depreciating nature; or

iii) Are upon such personal credit with or without security as the Trustees shall in their absolute discretion think fit.

7.4   **Proper Law of This Agreement Not Controlling.** The Trustees may exercise the Investment Power granted in this Paragraph 7:

i)   Without being restricted to Trustee investments prescribed under the Proper Law of this Agreement whatsoever;

ii)   Without the need for diversification; and

iii)   Without being liable for any loss occasioned thereby.

# 8. POWER TO LEND.

The Trustees shall possess the power to lend any part or parts of the Trust Fund upon such terms (if any) as to security, repayment, rate of interest, and otherwise as the Trustees in their absolute discretion may determine.

# 9. POWER TO GIVE GUARANTEES AND INDEMNITIES.

## 9.1 Guarantees.

i)   The Trustees shall possess the power to appropriate or to apply the capital or income of the Trust Fund (or any part thereof), at any time ("Guarantee Power"), for the purpose of:

a.   Securing the payment of money owed by any Person;

b.   Securing the performance of any obligations of any Person;

c.   Giving any guarantee;

d.   Becoming a surety for any Person.

ii)   For the purpose of exercising the Guarantee Power, granted by this Paragraph 9.1, the Trustees shall possess the power to:

a.   Mortgage or charge any investments or property contained within the Trust Fund at that time; or

b.   Deposit or transfer any such investments or property with or to any Person, firm, or company by way of security.

## 9.2 Indemnity.

i)   The Trustees shall possess the power to enter into any indemnity ("Indemnification Power") in favor of any former Trustee or any other Person in respect of any fiscal imposition or other liability of any nature prospectively payable in respect of the Trust Fund or otherwise in connection with this Agreement.

ii) For the purpose of exercising the Indemnification Power, granted by this Paragraph 9.2 the Trustees shall possess the power to charge or deposit the whole or any part of the Trust Fund as security for any such indemnity in such manner in all respects as they shall in their absolute discretion think fit.

## 10. POWER TO BORROW.

The Trustees shall possess the power to borrow on the security of the Trust Fund and for such purpose to make any outlay out of the income or capital of the Trust Fund and to make such contracts and to enter into such undertakings relating thereto as the Trustees in their absolute discretion shall think fit.

## 11. POWER TO MORTAGE OR CHARGE TRUST PROPERTY.

11.1   **General Power.**  The Trustees shall possess the power ("Security Power") to apply any part of the Trust Fund capital or income to secure on behalf of (1) any Beneficiary or (2) any company that the Trustees fully or partly own:

i)   The payment of money that such beneficiary or company owes; or

ii)  The performance of any obligations of such beneficiary or company.

11.2   **Ancillary Powers.**  For the purpose of exercising the Security Power granted by  this Paragraph 11, the Trustees shall possess the power to:

i)   Mortgage or charge any investments or property that the Trust Fund contains for the time being; or

ii)  Deposit or transfer any such investments or property with or to any Person, firm, company, trust, association, or concern.

## 12. POWER TO RECEIVE ADDITIONS.

The Trustees shall possess the power to receive any property as an addition to the Trust Fund, from any Person or Persons, by either (1) inter vivos gift, (2) will, (3) the provisions of any other agreement or trust, or (4) any other means.

## 13. POWER TO APPOINT TO OTHER AGREEMENTS AND GUARDIANS Of INFANT BENEFICIARIES.

13.1   **Appointment Power.**  In addition to any power conferred upon the Trustees by law, the Trustees shall possess the power (which they may exercise in their discretion) to appoint, pay, transfer, appropriate, or apply any of the Trust Fund capital or income for the benefit of any Beneficiary.

13.2 **Infant Beneficiaries.** The Trustees may validly exercise the power granted in this Paragraph 13 for a beneficiary who is an infant, by paying or transferring the amount in question to the parent, guardian, or other Person who for the time being has the care or custody of such infant if the recipient undertakes to apply the same for the benefit of such infant. In such cases:

    i) The Trustees shall not be obligated to see to the further application of the capital or income so paid or transferred; and

    ii) The receipt of the capital or income by such parent, guardian, or other Person shall be a full and sufficient discharge to the Trustees.

## 14. POWERS IN RELATION TO REAL PROPERTY.

14.1 **Power to Invest in Beneficiary Home.** The Trustees shall possess the power to pay out any part of the Trust Fund, at any time, to (1) purchase, (2) acquire, or (3) pay the expense of purchasing, acquiring, improving, or repairing any land or building that is or is intended to be occupied by any one or more of the Beneficiaries. The Trustees shall also possess the power to permit any one or more of the Beneficiaries to occupy, until sale, any real property purchased or acquired upon such terms (as to the payment or nonpayment of rent or expenses of repair or otherwise) as the Trustees may think fit. The Trustees may exercise the power granted by this Paragraph 14.1 without regard to whether the subject real property is a freehold, leasehold, or any other tenure or interest, and without regard to the location or description of such property.

14.2 **Power to Lease.** The Trustees shall possess the power to lease all or any part of any real property (referred to in this Paragraph as "the Real Property") for any purpose. The Trustees may exercise the power granted by this Paragraph 14.2:

    i) Without regard to whether the exercise of such power involves waste;

    ii) For any term;

    iii) Either wholly or partly in consideration of a rent (whether fixed or variable), fine, premium, or the erection, improvement, repair, or any agreement to erect, improve, or repair buildings, or other structures on the Real Property; and

    iv) To accept (with or without consideration) surrender of any lease of all or any part of the Real Property.

14.3 **Power to Sell Real Property.** The Trustees shall possess the power to sell all or any part of the Real Property. They may exercise the power granted by this Paragraph 14.3 for an annual sum payable that is:

    i) Either wholly or partly in consideration for such Real Property;

    ii) Either in perpetuity or for any term (whether definite or indefinite); and

    iii) Either reserved out of the Real Property sold or secured in such other manner as the Trustees shall in their absolute discretion think fit.

14.4   **Other Powers.** The Trustees shall possess the power in executing any trust or power of sale or leasing to:

i) Sell or lease all or any part of the Real Property, whether the division is horizontal or vertical or made in any other way;

ii) Sell or lease or reserve any easements, rights or privileges over all or any part of the Real property.

iii) Sell or lease or except or reserve any timber or mines or minerals on or in or under all or any part of the Real Property, together with any easements, rights, or privileges of cutting or working and carrying away the same or otherwise incidental to or connected with forestry or mining purposes;

iv) Impose and make binding for the benefit of all or any part of the Real property sold or leased any restrictions or stipulations as to use or otherwise affecting any part of the Real property retained

v) Accept in exchange for all or any part of the Real Property to be sold or leased (either with or without any money paid or received for equality of exchange) any other real or immoveable property or any lease; and

vi) Enter into any contract or grant any option for the sale or leasing of all or any part of the Real Property or otherwise for the exercise by the Trustees of any of their above powers.

PROVIDED that the Trustees shall not be bound to see to or be liable or accountable for omitting or neglecting to see to the repair or insurance of any buildings or other structures on the Real Property or to the payment of any outgoing or otherwise as to the maintenance of the Real Property or any buildings or other structures on the Real Property but may maintain, repair, or insure the same in such manner and to such extent as they shall in their absolute discretion think fit and may pay out of the Trust Fund or its income thereof the costs of all such repairs and of keeping up any such insurance and any such outgoings as aforesaid, and any such payments out of the income of the Trust Fund shall be made in priority to any other trusts affecting the same income.

## 15. POWERS IN RELATION TO PERSONAL PROPERTY.

15.1   **Power to Acquire personal Property.** The Trustees shall possess the power at any time or times to use part of the Trust Fund to purchase or acquire any of the following: yachts, boats, motor vehicles, works of art, household furniture, plate, linen, china, cutlery, and articles of household use, ornaments, or equipment for the use of any one or more of the Beneficiaries. The Trustees may exercise the power granted by this Paragraph 15 without regard to whether the Beneficiaries for whom the Trustees exercise such power occupy a building purchased or otherwise acquired as aforesaid.

15.2   **Power to Hand Over personal Property.** The Trustees shall possess the power to hand over to any of the Beneficiaries, for his, her, or their use, any of the personal property that the Trustees  purchase or acquire pursuant to this Paragraph 15, upon

and subject to such terms and conditions (as to insurance or preservation, and as to maintaining such inventory or inventories or otherwise) as the Trustees shall think fit.

## 16. POWER TO GRANT OPTIONS.

The Trustees shall possess the power to grant options to purchase (or acquire any interest in ) any property that is subject to the trusts hereof, for such proper consideration and exercisable at such times or within such period as the Trustees think fit.

## 17. POWER TO EFFECT TRANSACTIONS AS ABSOLUTE OWNER.

17.1 **Power to Effect Transactions.** The Trustees shall possess the power to Effect any Transaction concerning or affecting any part of the Trust Fund or any other property whatsoever if the Trustees consider the Transaction to be for the benefit of the Trust Fund or of the beneficiaries hereunder or any of them as if the Trustees were an absolute owner beneficially entitled to the Trust Fund.

   i) For the purpose of this Paragraph 17, the term "Transaction" includes:

   a. Any sale, exchange, assurance, conveyance, grant, lease, surrender, reconveyance, release, reservation, or other disposition;

   b. Any purchase or other acquisition;

   c. Any covenant, contract, license, option right for preemption, and any compromise or partition;

   d. Any company reconstruction or amalgamation; and

   e. Any other dealing or arrangement.

   ii) For the purpose of this Paragraph 17, the term "Effect" has the meaning appropriate to the particular transaction.

   iii) References to property include references to restrictions and burdens affecting the property.

17.2 **Power to Exercise Powers of Absolute Beneficial Owner.** The Trustees shall possess the power, with respect to the application or investment of any property that the Trust Fund contains, to exercise all powers that an individual absolute beneficial owner might exercise without being restricted in any way by the office of the Trustee, including the power (without prejudice to the generality of the foregoing power and for illustration purposes only):

   i) To give proxies or powers of attorney with or without power of substitution for voting or acting on behalf of the Trustees as the owners of such property; and

   ii) To omit to register bonds or securities.

## 18. POWER TO APPORTION.

The Trustees shall possess the power to determine whether dividends and other income that the Trustees receive shall be treated for all purposes hereof as income at the date or receipt, whether or not such dividends or other income shall have been earned wholly or partially in respect of a period before the date of receipt.

19.   **POWER TO DEAL WITH INSURANCE COMPANIES.**

The Trustees shall possess the power at any time or times to apply any of the Trust Fund capital or income in effecting, joining in effecting, or otherwise acquiring (1) any policy or policies of insurance on the life of any Beneficiary or of any other Person or (2) any endowment or other policy or policies. The Trustees shall also possess the power to maintain, surrender, exchange, exercise any option under, or otherwise deal with any such policy as if the Trustees were absolutely entitled thereto.

20.   **RELEASE OF POWER.**

20.1   **Power to Release Any Power.** The Trustees shall possess the power to release or restrict any power hereby or by law conferred on the Trustees.

20.2   **Manner of Exercise.** The Trustees may exercise the power granted by this Paragraph 20, at any time, by revocable or irrevocable deed, either wholly or partially, and notwithstanding the fiduciary nature of any such power (but not so as to invalidate any prior exercise thereof).

21.   **POWER TO VOTE AND TO EMPLOY CUSTODIANS.**

In respect of any property constituting the Trust Fund, the Trustees shall possess the power:

21.1   **Power to Vote.** To vote upon or in respect of any stocks, shares, securities, debentures, bonds, notes, or other evidence of interest in or obligations of any corporation, trust, association, or concern, whether or not affecting the security or the apparent security of the Trust Fund, or the purchase or sale or lease of the assets of any such corporation, trust, association, or concern.

21.2   **Powers to Employ Custodians.** To deposit any such shares, securities, or property in any voting trust or with any depository designated thereby.

22.   **POWER TO DELEGATE MANAGEMENT OF INVESTMENT.**

22.1   **Powers to Engage, Compensate, and Delegate to Investment Advisor.** The Trustees shall possess the power to engage the services of such investment counsel, manager, or other investment advisors as the Trustees from time to time think fit ( "the Investment Advisor") to advise the Trustees in respect of the investment and reinvestment of the Trust Fund. The Trustees shall also possess the power, without being liable for any consequential loss:

i)   To delegate to the Investment Advisor discretion to manage all or any part of the portfolio within the limits and for the period stipulated by the Trustees;

ii) To settle the terms and conditions for the remuneration of the Investment Advisor and the reimbursement of the Investment Advisor's expenses as the Trustee in their absolute discretion deem proper; and

iii) To pay the remuneration and expenses of the Investment Advisor from and out of the Trust Fund.

22.2   **Changes in Legal Status of Investment Advisor.** The Trustees shall not be required to inquire into, nor shall they be responsible in any manner for any changes in, the legal status of the Investment Advisor. Without limiting the foregoing, the foregoing shall hold true without regard to whether any such changes result from (1) the death of any director thereof or (2) its reorganization, incorporation, merger, consolidation, or otherwise.

22.3   **No liability for Following Advise of Investment Advisor.** The Trustees shall incur no liability for any action taken pursuant to or for otherwise following the advise of the Investment Advisor, however communicated.

## 23.   POWER TO INCORPORATE COMPANIES.

23.1   **Power to Incorporate.** The Trustees shall possess the power to incorporate, register, or procure the formation, incorporation, or registration of any company in any part of the world.

23.2   **Manner of Exercise.** The Trustees may exercise the power granted by this Paragraph 23, at the expense of the Trust Fund, with limited or unlimited liability.

23.3   **Power to Form Entity to Acquire Trust Fund.** Without limiting the foregoing, the Trustees may exercise the power granted by this Paragraph 23 for the purpose of (inter alia) acquiring all or any part of the Trust Fund so that (if thought fit ) the consideration from the sale of the Trust Fund or any part thereof to any company, partnership, association, or entity incorporated, formed, or registered pursuant to this Paragraph 23.3 may consist wholly or partly of debentures or denture stock or other securities or shares of the company that shall be allotted to or otherwise vested in the Trustees or their nominees and be capital moneys in the Trustees' hands of the Trustees' nominees.

## 24.   TRUSTESS NOT BOUND TO INTERFERE IN BUSINESS OF   COMPANY IN WHICH THE AGREEMENT IS INTERESTED.

24.1   **No Obligation to Interfere.**

i) Trustees shall not be required to interfere or ensure Trustees representation in the management or conduct of the business of any company or concern in which the Trust Fund may be invested, without regard to whether the Trustee control such company or concern.

ii) As long as no Trustee hereof has notice of any willful default, fraud, or dishonesty on the part of the Persons who conduct the concern or on the part of the concern itself, such Trustee may retain for himself or itself any remuneration that he or it may receive as such director, officer, manager, or employee. The foregoing shall hold true notwithstanding that:

    a. Any votes or other rights attached to such shares, debentures, interest, or participation may have been instrumental (either alone or in conjunction with other matters or by reason of their nonexercise ) in procuring or continuing for him or it, his or its position as such director, officer, manager, or employee; or

    b. The qualification of such Trustee for any such position is wholly or partially the fact that the Trust Fund contains such entity's shares or debentures.

**24.2  Power to Appoint Agent.**

i)    The Trustees shall possess the power to appoint any Trustee hereof to be the agent of the Trustees and to undertake and transact any business or to do any act requiring to be transacted or done in the execution of the trusts hereof.

ii)   **Trustee Agent.** Without limiting the power granted by this Paragraph 24.2, the Trustees may appoint any corporate Trustee and any parent, subsidiary, or affiliate of any such corporate Trustee to be  the agent of the Trustees.

iii)  **Compensation to Such Trustee Agent.** Without prejudice to the generality of the foregoing in exercise by the Trustee of the powers contained in Paragraph 22 of this Agreement and in any such event, such appointed agent may charge and be paid and may retain for its own account all usual professional and other fees and commissions normally paid for such services, including fees and commissions shared with other agents.

## 25.  POWER TO WAIVE AUDITS OF COMPANY ACCOUNTS.

The Trustees shall possess the power to exercise such voting rights attaching to shares of companies held in the Trust Fund to waive (1) the appointment of auditors and (2) the presentation of audited accounts to the shareholders of such company or companies, and such power shall be exercisable at the complete discretion of the Trustees.

## 26.  POWERS RELATING TO UNDERLYING COMPANIES.

**26.1 Power to Appoint Directors, Officers, Etc.** The Trustees shall possess the power, with regards to any company, trust, association, or concern whose shares, debentures,

interest, or participation the Trust Fund contains, to appoint any Trust hereof (and any director, officer, or employee of a corporate Trustee) to act as a director, officer, manager, or employee of such entity or of any subsidiary or holding company of any such entity.

26.2 **Management.** Concerning the exercise of the power granted by this Paragraph 26, the Trustees shall be at liberty to leave the conduct of the management of the company or concern (including the payment or nonpayment of dividends or distributions) wholly to such Persons.

26.3 **Limitation on Rights of Beneficiaries.** Notwithstanding any other provision of this Agreement, no beneficiary shall be entitled to compel, control, or forfeit the exercise (including any particular manner) of any voting rights or other rights at any time vested in the Trustees with regard to any such company or concern, including any powers the Trustees may have (even if also directors of such company).

## 27.   POWER TO APPOINT AGENTS.

The Trustees shall possess the power to employ and pay at the expense of the Trust Fund capital or income any agent or agents in any part of the world. Without limiting the foregoing, (1) such agents may include solicitors, bankers, accountants, stockbrokers, managers, or other Persons (including any Trustees hereof), and (2) such agents may transact any business or do any act required to be transacted or done in the execution of these trusts, including the receipt and payment of money and the execution of documents.

## 28.   POWER TO PERMIT SELF-DEALING.

28.1 **Power to Participate in Trustee Activities.** The Trustees or any of them shall possess the power to exercise, join, or exercising all or any of the powers and discretions hereby or by law given to the Trustees, notwithstanding that such Trustee or Trustees may have a personal interest in the mode or result of exercising any such power or discretion or may be interested in such transaction in some other fiduciary capacity. Notwithstanding the foregoing, any Trustee may abstain from acting except as a merely formal party in any matter in which he may be so interested as aforesaid and may allow his co-Trustee or co-Trustees to act alone in the exercise of the powers and discretions aforesaid in relation to such matter.

28.2 **Power to Sell or Buy from Trust.** The Trustees shall possess the power to purchase or sell any property, notwithstanding that the Person or Persons selling or purchasing such property are the same as or include the Trustees or any of them. Notwithstanding the foregoing, the price payable on any such purchase or sale shall be certified to be fair and reasonable by an independent valuer employed for the purpose by the Trustees.

## 29.   DELEGATION OF POWERS.

The Trustees shall possess the power (notwithstanding any rule of law to the contrary), by revocable or irrevocable deed and until the perpetuity day, to delegate to any Person who is

a Trustees hereof or to a majority of such Trustees the execution or exercise of all or any trusts, powers, and discretions hereby or by law conferred on the Trustees.

## 30.  POWER TO KEEP TRUST FUND ABROAD.

The Trustees shall possess the power to keep all or any part of the Trust Fund either in or out of the Commonwealth of the Bahamas and, if the Trustees think fit, to hold in any part of the world all or any securities or other property in bearer form or in the names of the Trustees or in the name of some other appointed nominee or nominees disclosing the fiduciary relationship.

## 31.  POWER TO PAY TAXES AND DUTIES.

The Trustees shall possess the power in the event of any probate, succession, or state duty, gift tax, or other duties, fees, or taxes whatsoever becoming payable in any part of the world concerning the Trust Fund or any part thereof, in any circumstances whatsoever, to pay all such duties, fees, or taxes out of the Trust Fund or the income thereof.  Moreover, such Trustees shall have entire discretion as to the time and manner in which the said duties, fees, or taxes shall be paid, and the Trustees may paid such duties, fees, or taxes, notwithstanding that the same shall not be recoverable from the Trustees or from any Persons interested hereunder or that the payment shall not be to the advantage of such persons.

## 32.  POWER TO SET ASIDE RESERVES.

The Trustees shall possess the power to make such reserves out of the Trust Fund or the income thereof as the Trustees deem proper for expenses, taxes, and other liabilities.  The Trustees shall also possess the power to pay from the income or from capital or to apportion between income and capital any expenses of making or changing investments and selling, exchanging, or leasing (including brokers' commissions and charges) and generally to determine what part of the expenses of this Agreement shall be charged to capital and what part to income.

## 33.  POWER TO EXECUTE CERTAIN DOCUMENTS.

The Trustees shall possess the power to make, execute, and deliver deeds, assignments, transfers, leases, mortgages, instruments of pledge creating liens, contracts, and other instruments sealed or unsealed.

## 34.  POWER TO PROSECUTE AND DEFEND LEGAL ACTIONS.

34.1  **Actions.**  The Trustees shall possess the power to institute, prosecute, and defend any suits or actions or other proceedings affecting the Trustees or the Trust Fund.

34.2  **Compromises.**  The Trustees shall possess the power to compromise any matter of difference, to submit such matter to arbitration, to compromise or compound any debt owing to the Trustees or any other claims, and to adjust any disputes

concerning any debts or claims against as such Trustees shall determine upon evidence that the Trustees deem sufficient.

34.3 **Partition of Property.** The Trustees shall also possess the power to partition property upon such items (including if thought fit the payment or receipt of equality money) as the Trustees shall deem desirable with co-owners or joints tenants besides the Trustees having any interest in any property in which the Trustees are interested and to partition such property either by sale or by setoff or by agreement or otherwise.

## 35.   POWER TO DISTRIBUTE IN SPECIE.

The Trustees shall possess the power to make any distribution of the Trust Fund capital or income pursuant to the trusts hereof in cash, in kind, or partly in cash and partly in kind. The Trustees shall also possess the power, in the case of distribution to more than one Person, to make such distribution not strictly pro rata but on the basis of equal or other proportionate value (as the case may require) according to the judgment of the Trustees, which shall be binding on all Persons interested hereunder.

## 36.   POWER TO VALUE TRUST PROPERTY.

The Trustees shall possess the power upon and for the purpose of any distribution or appropriation of the Trust Fund or any part thereof at their discretion to place such valuation on the Trust Fund as the Trustees shall think fit, and such valuation made in good faith shall be absolutely final and binding on all of the Beneficiaries; and furthermore, upon any such distribution or appropriation, the Trustees shall have the power to determine to whom specified assets shall be given and to distribute the same subject to the payment of such amounts as may be necessary to adjust the shares of the various Beneficiaries.

## 37.   POWER TO SEEK LEGAL ADVICE.

The Trustees shall possess the power to take at the expense of the income or capital of the Trust Fund the opinion of legal counsel concerning any question arising under this Agreement or on any matter in any way relating to the Trust Fund or the duties of the Trustees in connection with this Agreement, and insofar as the Trustees choose to act in accordance with the opinion or advise of such counsel, they shall not incur any liability.

## 38.   POWER TO APPLY CAPITAL OR INCOME TO CHARITIES.

In exercise of the trusts and powers herein before contained, the Trustees may at the request of any Beneficiary entitled thereto pay or apply any part of the capital or income of the Trust Fund to or for the benefit of any charity or charitable institution approved by such Beneficiary, and any such payment or application shall be deemed to be for the benefit of a Beneficiary, and the Trustees shall not be restricted by any rule of law as to the amount or manner of such payment or application, and the receipt in writing of the treasurer or other officer of any charitable institution shall be a sufficient discharge to the Trustees for any capital or income paid to such institution hereunder.

### 39.   TRUSTEES' DISCRETION.

Every discretion or power hereby conferred on the Trustees under this Agreement shall be an absolute and uncontrolled discretion or power, and no Trustee hereof shall be held liable for any loss or damage occurring as a result of his concurring or refusing or failing to concur in any exercise of such discretion or power.

### 40.   POWER TO VARY ADMINISTRATIVE POWERS.

The Trustees shall possess the power at any time or times during the Discretionary Period by deed or deeds to revoke or vary any of the administrative provisions of this Agreement or to add any further administrative provisions as the Trustees may consider expedient for the purposes of this Agreement and without prejudice to the generality of the above for ensuring that at all times there shall be a Trustee of this Agreement and that the Trust Fund shall be fully and effectively vested in or under the control of such Trustee and that the trust of this Agreement shall be enforceable by the Beneficiaries PROVIDED THAT such variation or revocation shall not alter or revoke or otherwise adversely affect the interests or shares of any of the Beneficiaries.

### 41.   PAYMENT OF TAXES.

The Trustees may at their discretion pay out of the capital or income of the Trust Fund any taxes of any kind which become payable anywhere in the world in respect to any part of the Trust Fund or its income (whether or not enforceable) either by the Trustees, or by the Settlor or any other Person who has transferred assets to this Agreement, or by any Beneficiary, notwithstanding that the payment of taxes may be prejudicial to one or more of the Beneficiaries.

### 42.   REMUNERATION OF THE TRUSTEES.

Every Trustee shall be entitled to remuneration upon such terms as may agrees by the Settlor in his lifetime or after his death by the Person  who for the time being has power to appoint a new trustee.  In the absence of such an agreement every Trustee shall be entitled to remuneration in accordance with its  normal scale of charges (if applicable) at that time, out of the capital or income of the Trust Fund.

### 43.   LIABILITY OF THE TRUSTEES.

No Trustee shall be liable for any loss of the Trust Fund or its income, however caused, unless it results from willful fraud or dishonesty of such Trustee.  The Trustees shall not be bound or required to interfere in the management or conduct of the business of any company in which the Trustees hold shares, whatever the proportion of the issued share capital they hold.  Unless the Trustees have actual notice of any act of dishonesty on the part of the directors managing such a company, the Trustees shall be at liberty to leave the conduct of the company's business (including the decision whether or not to pay dividends) wholly to the directors.

### 44.   RETIREMENT OR REMOVAL OF TRUSTEES.

44.1 **Retirement.** Any Trustees may retire at any time, provided he gives 30 days written notice to the Settlor if he is living, after the Settlor's death to the Person who at that time has the power to appoint new trustees.

44.2 **Dismissal.** Subject to the provisions of Paragraph 50, below, the Trust Advisor during his lifetime shall have the power to dismiss any Trustee by giving 30 days notice in writing to such Trustee.

44.3 **Effective date.** In each case the retirement or dismissal shall not take effect unless and until there are at least one corporate or two individual trustees to act as continuing trustees.

## 45. APPOINTMENT OF NEW OR ADDITIONAL TRUSTEES.

45.1 **Death, Retirement, Dismissal, Refusal to Act, Unfit to Act.** Where a Trustee is dead, or retires or is dismissed, or refuses to or is unfit to act, then (1) the Advisory Committee, or (2) if the Advisory Committee is unable or unwilling to act, the continuing Trustee, or the personal representative of the last surviving Trustee, or (3) if there is no such Person, the retiring or dismissed Trustee, may by writing appoint one or more other Persons other than the Settlor or the Settlor's spouse or someone controlled by either of them (whether or not being the Persons exercising the power) to be a Trustee or Trustees in the place of the Trustee so deceased, retiring, dismissed, refusing or being unfit. However, notwithstanding the generality of the foregoing, the new and additional trustee shall not be an individual who is a citizen or resident of the Settlor's place of residence if such residence is within either the United States or Canada or a corporation incorporated in the United States or Canada or having its principal business or office in the United States or Canada.

45.2 **Other Appointment.** Subject to Paragraph 50, below, the Settlor or after his/her death the Settlor's spouse if he/she survives him, or after the death of both of them the continuing Trustees, may from time to time by writing appoint another Person other than the Settlor or the Settlor's spouse to be a new or additional Trustee. However, notwithstanding the generality of the foregoing, the new and additional trustee shall not be an individual who is a citizen or resident of the Settlor's place of residence if such residence is within either the United States or Canada or a corporation incorporated in the United States or Canada or having its principal business or office in the United States or Canada.

45.3 **Minimum Number.** The Trustees shall always consist of at least two individuals or a corporation; but a sole surviving individual Trustee who is not a United States citizen or resident may exercise the powers conferred on the continuing Trustees by 45.1 and 45.2 above (but no other powers).

45.4 **Court of Competent Jurisdiction.** In the event no new trustee is or can be appointed under the provisions of this Paragraph 45, the retiring Trustee or the personal representative of the deceased Trustee may petition a court of competent jurisdiction in the jurisdiction where this Trust is then administered for the appointment of a new or additional Trustee. The powers of the Settlor or Trustees under this Paragraph 45 shall be limited by the provisions of Paragraph 50, below.

**45.5 Power of Trust Advisor in Event of Trustee Change.**

i) The Trust Advisor shall have the power, upon any change in the Trustees hereunder, to give written notice of any such change to any of the following:

    a. Any Person to whom the Trustees have delegated any of their powers;

    b. Any investment advisor;

    c. Any consultant;

    d. Any nominee;

    e. Any custodian;

    f. Any bank;

    g. Any financial institution; or

    h. Any other Person who in the opinion of the Trust Advisor is or may be affected by any such change.

ii) Upon receiving a notice provided for in Paragraph 45.5, the person receiving such notice shall be entitled to rely on such notice as sufficient evidence of any change in the Trustees and shall be entitled to act accordingly.

## 46. FORUM OF ADMINISTRATION AND PROPER LAW OF THE AGREEMENT.

**46.1 Governing Law.** This Agreement is established under the laws of the Commonwealth of the Bahamas, which shall be the initial forum for its administration. The rights of the beneficiaries and the rights, powers and duties of the Trustees under this Agreement, and the construction and effect of every provision of this Agreement, shall be determined according to the laws of the Commonwealth of the Bahamas, which shall constitute the proper law of this Agreement so long as this Trust is administered in the Commonwealth of the Bahamas, but if the place of administration of this Trust is relocated to another country, then the rights shall be subject to the exclusive jurisdiction of the Courts of the place where this Agreement is from time to time being administered, which shall be the forum of administration for the time being of this Agreement.

**46.2 U.S. Settlors And Beneficiaries Only.** The Trustees (or any of the Trustees if there are more than one) may take any action, deemed in the best interest of a U.S. Settlor or U.S. Beneficiaries of this Trust, to comply with any law or act of any jurisdiction in which the Settlor or beneficiaries may be resident with respect to this Trust, including but not limited to, the appointment of a Limited U.S. Statutory Agent, a term created by the Small Business Protection Act enacted on August 20, 1996 (P.L. 104-188) provided that such action is limited to such acts as are required by the Foreign Trust Compliance Provisions of the Act, or by subsequent laws, guidance, regulations, pronouncements, decisional laws or other writings as found to apply, and it does not jeopardize the underlying purpose of this Trust, which is the protection of assets from

creditors.  The Settlor and Beneficiaries hereby agree to indemnify and hold harmless Trustees from any action or appointment created by this Paragraph including the sharing of information with such Statutory agent regarding this Trust.

**46.3   Other Jurisdictions.**   The Trustees shall have the power in their absolute discretion to move the administration of this Agreement at any time to any other jurisdiction in the world other than the United States or Canada and to appoint new or additional Trustees at any time in any jurisdiction in the world other than the United States or Canada.

**46.4   Creation of New Trust.**  The Trustees shall have the power in their absolute discretion to create a new trust in any jurisdiction other than the United States or Canada and to appoint themselves or other non United States or Canadian Persons as Trustees of the new trust and to transfer the assets and liabilities of this Agreement to the new trust.

**46.5   Appointment of Emergency Trustees.**

    i)    During the Discretionary Period, the Trust Advisor may appoint a Person or Persons to be the Emergency Trustees of this Agreement.

    ii)    The Trust Advisor may exercise the power granted by this Paragraph 46.5 by delivering a written  deed to the Trustees appointing the Emergency Trustees of this Agreement.

    iii)    Notwithstanding any provision of this Paragraph 46.5 or any other provision of this Agreement, the Trust Advisor may not appoint any Person to be an Emergency Trustee who resides in a territory in which an Emergency Event (as defined below) has occurred within the previous year of such appointment, or in the case of a United States or Canadian citizen or resident Settlor, the United States or Canada.

**46.6   Succession of Emergency Trustee as Trustee.**  An Emergency Trustee shall become a Trustee under this Agreement immediately upon the ceasing of a Trustee continuing as a Trustee in accordance with Paragraph 46.8.

**46.7   Resignation or Removal of Emergency Trustee.**

    i)    An Emergency Trustee (not having become one of the Trustees) may at any time resign by giving written notice to the Trust Advisor (if any) and the Trustees.

    ii)    The Trust Advisor may remove an Emergency Trustee from office (who has not become one of the Trustees) at any time by giving written notice to such Emergency Trustee.

**46.8   Emergency Events.**

    i)    Any Trustee hereof shall automatically cease to be a Trustee on the happening of any of the following events ("Emergency Event") within the territory where such Trustee (1) resides (in case of an individual) or (2) is incorporated (in the case of a corporate Trustee):

a. Military forces invade such territory.

b. Any governmental authority, agency, or officer of or within said territory, directly or indirectly, (1) enacts any law, or (2) takes any action, whose aim, purpose, or effect is (or would be had such Trustee) sole control of the assets composing the Trust Fund:

    (1) To acquire, expropriate, or confiscate any of the assets that the Trust Fund contains, or any part thereof;

    (2) To jeopardize interfere with, or hamper the free exercise by such Trustee of its fiduciary obligations, powers, and discretions;

    (3) To restrict, suspend, abrogate, withdraw, cancel, or rescind any exemption, relief, or contract relating to the trusts of this Agreement concerning the Trust Fund or any part thereof (whether in respect of exchange or currency control, or any other matter);

    (4) To levy any tax or duty (other than standard governmental charges) in respect of any company.

c. A governmental official or a governmental body or agency either (1) nationalizes or attempts to nationalize the Trustees or (2) substantially intervenes in or attempts to substantially intervene in the affairs of the Trustee.

d. Civil war or violent disturbances occur in that territory, which will cause or appear likely to cause a serious and prolonged interference with the ability of the Trustee to function as such.

e. The government or any other public authority of that territory acquires a controlling interest in the Trustee.

f. The government or any other public authority of that territory substantially restricts the power of the Trustee to transfer assets constituting income or capital of the Trust Fund out of that territory for the purpose of investment or distribution.

ii) Upon the Trustee's ceasing to be a Trustee pursuant to this Paragraph 46.8:

a. Such Trustee or Trustees shall be divested of tittle to the Trust Fund;

b. The Trust Fund shall automatically vest in the Emergency Trustees as if the Emergency Trustees had been the original Trustee hereof.

c. Notwithstanding any other provisions of this Agreement, the forum for the administration and the Proper law of this Agreement shall forthwith be deemed to be the place of residence or incorporation (if a corporation) of such Emergency Trustees or such other jurisdiction or territory that is designated under the deed appointing the Emergency Trustees.

iii) Exception:

a. Notwithstanding Paragraphs i) and ii) of this Paragraph 46.8, if the Trust Advisor issues a written certificate no later than fourteen (14) days following the happening of an Emergency Event to the effect that Paragraphs i) and ii) of this Paragraph 46 shall not be deemed to have applied notwithstanding the happening of any such Emergency Event, such written certificate shall be conclusive for the purpose of reinstating as a Trustee hereof the Trustee automatically removed under the provisions of Paragraph i) of this Paragraph.

b. The Trust Advisor shall be obligated to make his/her best endeavors to deliver any certificate issued under paragraph 46.8 iii) a, above, to the Emergency Trustee and to the reinstated Trustees as soon as practicable.

## 47. AMENDMENT OF THE AGREEMENT.

47.1 **Alterations or Additions.** The Trustees may at any time or times during the Discretionary Period by writing make any alterations to the provisions of this Agreement including the Trust's powers and discretions and administrative powers hereunder which they consider in their absolute discretion to be for the benefit of all or any one or more of the Beneficiaries.

47.2 **Extinguish Powers.** The Settlor and the Trustees may at any time or times during the Discretionary Period by writing extinguish (or restrict the future exercise of) any of the powers conferred on him or (as the case may be) them by this Agreement or where permitted by law.

47.3 **Release of Consent.** The Settlor may at any time or times during the Discretionary Period by writing release the requirement of his consent either generally or in relation to any particular provision of this Agreement.

## 48. COMMUNITY OF PROPERTY SHALL NOT APPLY.

No benefit devolving on any Beneficiary under this Trust shall form or constitute a portion of any communal or joint estate of such Beneficiary but such benefit shall be and remain the sole separate and exclusive property of such Beneficiary. For the purposes of this clause the word "benefit" shall include movable and immovable property and any interest of any type whatsoever therein and the provisions of this clause shall apply moreover not only to the benefit actually devolving on any Beneficiary but also the property for the time being representing the same and the income thereof.

## 49. DEALING WITH OTHER PARTIES.

49.1 **Validity of Actions.** No Person or company dealing with the Trustees and no purchaser on any sale made by the Trustees shall be concerned to enquire into the propriety or validity of any act of the Trustees or to see to the application of any money paid or property transferred to or upon the order of the Trustees.

49.2 **Delegation of Authority.** No company any of whose securities are included in the Trust Fund and no purchaser or other Person dealing with any Trustees purporting to

act under any delegation of authority from the Trustees shall be requires to ascertain or inquire whether a case exists in which such delegation is permitted or whether such delegated authority is still subsisting.

49.3   **Good Faith Actions.** When anything is dependent upon the value of any property or the existence of any fact the Trustees may determine conclusively such value or such fact and the certificate of the Trustees as to such determination shall be conclusive in favor of anyone acting thereon in good faith.

49.4   **Changes in Trusteeship.** On every change in the trusteeship, a memorandum shall be endorsed on or permanently annexed to this Trust stating the names of the Trustees for the time being and shall be signed by the Persons so named and any Person dealing with the Trust shall be entitled to rely upon any such memorandum (or the latest of such memoranda if more than one) as sufficient evidence that the Persons named therein are the truly constituted Trustees for the time being of this Trust.


## 50.  PROTECTIVE PROVISIONS.

50.1   **Interest Income.** With respect to the Settlor, the Principal Beneficiary and any other beneficiaries, no interest in income or principal of this Trust shall be anticipated, encumbered or assigned.  No such interest shall be subject to judgments or other claims of creditors, spouses, former spouses or others.  If, except for this provision, all or a part of such interest would vest in or be enjoyed by any individual or entity other than the Settlor, the Principal Beneficiary or the Beneficiaries of such interest, then such interest shall terminate.  Thereafter, the Trustees from time to time may, but shall not be obligated to, pay to or expend for the benefit of the Settlor, the Principal Beneficiary or the Beneficiaries of such terminated interest, such amounts of the income or principal as the Trustees in their discretion deem proper.

50.2   **Compelled Request.** In the future event that the Trustees receive any advice, instructions, recommendations or requests from any Settlor, Beneficiary, individual, business entity or other Person, the Trustees are to the extent allowed by law obligated to disregard the same if the Trustees reasonably believe that any such Settlor, Beneficiary, individual, business entity or other Person is being compelled by a Court or a Trustee in bankruptcy or any other source of compulsion, except the Supreme Court of the Commonwealth of the Bahamas.

50.3   **Court Order or Advice.** The Trustees are to the extend allowed by law obligated to disregard any advice, order or similar instruction if it comes from or if the Trustees reasonably believe it is compelled by a Court, a Trustee in bankruptcy or any other source of compulsion, except the Supreme Court of the Commonwealth of the Bahamas.

SETTLORS

PAR.
51

REX T. KING SS#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
RUA KING    SS#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

1120 CHEYENNE DR.
INDIAN HARBOR BEACH, FL.
32937

407-777-2670

BENE:

PAR.
53

L. LEE KING
301 LYTLE ST.
W. PALM BEACH, FL.
33405

SS#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

**51.   THE SETTLOR IS:**

Name:_____

Name of the Spouse (if applicable):_____

Address:_____

Phone/Fax:_____

**52.   THE SETTLOR IS THE PRINCIPAL BENEFICIARY UNLESS
        OTHERWISE SPECIFIED BELOW:
        [LEAVE BLANK IF SETTLOR IS PRINCIPAL BENEFICIARY]**

Name or Class:_____

Name of Spouse (if applicable):_____

Address:_____

Phone/Fax:_____

**53.  THE CHILDREN OF THE PRINCIPAL BENEFICIARY ARE:**

Name:_____     Name:_____

Passport/ Driver License/ Social Security # :_____

Address:_____     Address:_____

_____     _____

Phone:_____     Fax:_____

Percent Share:_____     Percent Share:_____


Name:_____     Name:_____

Passport/ Driver License/ Social Security #:_____

Address:_____     Address:_____

_____     _____

Phone:_____     Fax:_____

Percent Share:_____     Percent Share:_____

PAR
55    ANTHONY MICCICHE
100I4 N. DALE MABRY STE. 10,
TAMPA, FL. 33618

813-265-4445

FINANCIAL ADVISOR

**54. THE CHARITY REFERRED TO IN PARAGRAPH 1.6 v) (IF A CHARITABLE BENEFICIARY IS DESIRED) IS:**

Name of charity:_____

Address:_____

Phone/Fax:_____


**55. THE TRUST ADVISOR REFERRED TO IN PARAGRAPH 6 (IF A TRUST ADVISOR IS DESIRED) IS:**

Name or Names:_____

Address:_____

Phones/Faxes:_____

Relationship (your attorney, CPA or financial advisor, etc.):_____

Signed by the Settlor(s) this_____ day of _____, 19_____.


X *Rex T King*                          X *Rva Lee King*
_____             _____
Settlor                                 Settlor  (if joint trust)


Witnesses: *Beverly A Gentzlinger*
_____

_____             _____


The Common Seal of INTRADOS, S.A. was affixed in the presence of:


_____             _____
Authorized Signature                    Authorized Signature

## DECLARATION OF VALIDITY OF DISPOSITION

The Undersigned, being the prospective Settlor of certain assets into a trust to be established in the Commonwealth of the Bahamas with INTRADOS, S.A. as Trustee, hereby declares and confirms that any encumbrance of such assets has been disclosed in writing to the Trustee.  The Undersigned hereby further declares and confirms that he/she has no knowledge of any existing or contingent debts which he/she is unable to satisfy from other assets presently owned by or under the control of the Undersigned for his/her benefit or disposition.

The Undersigned declares and confirms that the source(s) of any assets transferred by him/her is/are as follows:  earnings or savings from earnings _____, investments _____, inheritances _____, gifts _____, or other (please describe)_____ _____.  [Initial or describe each source which applies].  The Undersigned also declares and confirms that none of the assets transferred to the Trust described above by the Undersigned is the result of illegal activity.

The Undersigned understands and confirms that the Trust described above can be prepared only by or under the supervision of an attorney.  The name of the attorney preparing or supervising the preparation of the Trust described above is _____.

Signed this _____ day of _____, 19 _____.

X _Rua Lee King_

_____   X _Rex T King_
Witness                                              Settlor

Date: _____

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED

02 AUG 30 PM 12:05

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

BROOKSTREET SECURITIES
CORPORATION,

    Plaintiff,

v.                           Case No. 8:02-cv-1498-T-24EAJ

FRANK A. DATINO,

    Defendant.

_____/

## O R D E R

This cause comes before the Court for consideration of Plaintiff's Motion for Preliminary Injunction (Doc. No. 2, filed August 16, 2002). The Defendant filed a Response thereto (Doc. No. 16, filed August 27, 2002). The Court held a hearing on the motion on August 28, 2002. At the hearing, the Defendant indicated he had no objection to the entering of a preliminary injunction and presented no evidence in opposition to the motion.

The Court finds that Plaintiff has demonstrated a sufficient:

(a)    likelihood of success on the merits;

(b)    irreparable harm if forced to arbitrate Defendant's claims in that Plaintiff will be deprived of its constitutional rights to a jury, appellate proceedings, and all other rights afforded to them under the Constitution of the United States. Plaintiff may also be irreparably injured as a default judgment may be entered against Brookstreet Securities Corporation in the NASD proceeding;

(c)    a balance of hardships tipping in Plaintiff's favor; and

(d)    the absence of any public interest factors militating against the interim relief sought by Plaintiff's motion for a preliminary injunction.

Accordingly it is **ORDERED and ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 2) is **GRANTED**. Frank A. Datino and those acting in concert with him, including his attorneys, are hereby restrained from proceeding with the arbitration filed by Defendant before the National Association of Securities Dealers Arbitration Tribunal, Inc. pending the resolution by this Court of Plaintiff's Complaint.

**DONE AND ORDERED** at Tampa, Florida, this _30_ day of August, 2002.

SUSAN C. BUCKLEW
United States District Judge

Copies to Counsel of Record

F I L E   C O P Y

Printed: 09/03/2002

ce sent to:

    ———   Burton Webb Wiand, Esq.
            Fowler White Boggs Banker, P.A.
            501 E. Kennedy Blvd.
            P.O. Box 1438
            Tampa, FL  33601-1438

    ———   Michael S. Lamont, Esq.
            Fowler White Boggs Banker, P.A.
            501 E. Kennedy Blvd.
            P.O. Box 1438
            Tampa, FL  33601-1438

4

## 93-64 SEC Approves Amendments Concerning Arbitration of Employment-Related Disputes: Effective October 1, 1993

### Executive Summary

On August 25, 1993, the Securities and Exchange Commission (SEC) approved amendments to Part I, Section 1, and Part II, Sections 8 and 9, of the Code of Arbitration Procedure (Code) to clarify that employment-related disputes are arbitrable and to provide that employment discrimination or employment claims involving public policy issues should be heard by a panel composed of a majority of public arbitrators.

The amendment is effective October 1, 1993. The text of the amendment follows this Notice.

### Background

On August 25, 1993, the SEC approved amendments to Part I, Section 1, and Part II, Sections 8 and 9, of the Code. The amendments clarify that employment-related disputes are arbitrable under the Code and provide that in cases involving employment discrimination or employment claims involving public policy issues, the panel should consist of a majority of public arbitrators.

Amended Section 1 of the Code provides that disputes, claims, or controversies arising out of the employment or termination of employment of an associated person are eligible for submission to arbitration. This change insures that a party to such disputes may compel arbitration. The amendment to Section 8 specifies that matters arising out of the "employment or termination of employment" of an associated person are arbitrable. The amendments cure an existing ambiguity between the language of Section 8, which requires the arbitration of disputes "eligible for submission under Part I between or among members and/or associated persons," and Part I, Section 1, which does not refer to employment disputes as eligible for submission. A new subsection 2 to Section 1 also clarifies that such employment-related disputes are eligible for submission if they are between or among members and associated persons. Finally, amendments to subsection 1(3) clarify that disputes between or among associated persons and public customers are eligible for submission to arbitration.

The NASD has amended Section 8 to clarify that employment disputes are arbitrable through language which parallels the language of the New York Stock Exchange's arbitration code. Amended Section 8 requires the submission of a claim arising out of the employment or termination of employment of an associated person by and with a member.

The NASD also amended Section 9(a) to provide that claims arising out of the employment or termination of employment of an associated person, and that relate exclusively to disputes involving employment contracts, promissory notes, receipt of commissions, or wrongful discharge, the panel of arbitrators shall be made up of industry arbitrators as provided by Sections 9(b)(i), (b)(ii), or 10 of the Code. In all other instances, including age, sex or race discrimination, sexual harassment claims, or other public policy issues would govern selection of Section 13 or 19, the panel of arbitrators. This would result in a panel with either a single public arbitrator or a majority of public arbitrators. These amendments reflect the NASD's view that disputes involving employment contracts, promissory notes, receipt of commissions, and wrongful discharge implicate industry practice and require industry experience.

Other disputes, however, involving public policy issues such as employment discrimination and sexual harassment require little industry expertise and the interests of the parties are better served by a panel consisting of a majority of public arbitrators.

Questions concerning this Notice may be directed to the NASD Arbitration Department at (212) 480-4881.

**Text of Amendments to Part I, Section 1, and Part II, Sections 8 And 9 of the Code of Arbitration Procedure**

**Note:** New language is underlined; deletions are in brackets.)

Part I. Administrative Provisions

*Matters Eligible for Submission*

**Sec. 1.** This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a) 3) of the By-Laws of the National Association of Securities Dealers, Inc., (The Association) for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:

1) between or among members;

2) between or among members and associated persons;

3) between or among members or associated persons and public customers, or others; and

4) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledgees or other persons using the facilities or a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

* * * *

Part II. Industry and Clearing Controversies

**Sec.8.** *Required Submission*

) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated persons(s), or arising out of the employment or termination of employment of such associated person(s) by and with such member, shall be arbitrated under this Code, at the instance of:

) a member against another member;

) a member against a person associated with a member or a person associated with a member against a member; and,

) a person associated with a member against a person associated with a member.

· * * *

**Sec.9.** *Composition of Panels*

In disputes subject to arbitration that arise out of the employment or termination of employment of associated person, and that relate exclusively to disputes involving employment contracts, promissory notes or receipt of commissions the panel of arbitrators shall be appointed as provided by Sections ((b)

4/3/03

i), (b)(ii) or 10 of the Code, whichever is applicable. In all other disputes arising out of the employment
r termination of employment of an associated person, the panel of arbitrators shall be appointed as
rovided by Sections 13 or 19 of the Code, whichever is applicable.

(a)]

b) (i) Except as otherwise provided in Section 9(a) or 10 of the Code, in all arbitration matters between
r among members and/or persons associated with members, and where the amount in controversy does
ot exceed $30,000, the Director of Arbitration shall appoint a single arbitrator to decide the matter in
ontroversy. The arbitrator chosen shall be from the securities industry. Upon the request of a party in
ts initial filing or the arbitrator, the Director of Arbitration shall appoint a panel of three (3) arbitrators,
ll of whom shall be from the securities industry.

(b)]

ii) Except as otherwise provided in Section 9(a), in [In] all arbitration matters between or among
members and/or persons associated with members and where the amount in controversy exceeds
30,000, a panel shall consist of three arbitrators, all of whom shall be from the securities industry.

4/3/03

5



**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BROOKSTREET SECURITIES**
**CORPORATION**

      Plaintiff,

v.                                      Case No. *8:02-CV-1498-T-*
                                              *23mAP*

**FRANK A. DATINO**

      Defendant.

_____/

**BROOKSTREET SECURTIES CORPORATION'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND**
**PERMANENT INJUNCTION**

Plaintiff Brookstreet Securities Corporation ("Brookstreet") hereby moves the

Court for a temporary restraining order and preliminary injunction against Defendant

pursuant to Rule 65(a) & (b) of the Federal Rules of Civil Procedure. Plaintiff's motion

and request is based on the attached Memorandum of Law, Declaration of Kathleen M.

McPherson, and Declaration of Hugh O. Barndollar.

Prior to the filing of this action with this Court, Plaintiff's counsel, Burton W.

Wiand, notified J. Benton Stewart, counsel for the Defendant, Frank A. Datino, of

Plaintiffs intention to seek a temporary restraining order. *See* Declaration of Burton W.

Wiand. ("Wiand Decl"). Notice was given in the form of a phone call on August 16,

2002, to Mr. Stewart's place of business. Mr. Stewart has also been provided with a copy

of all papers to be filed. Wiand Decl. p. 1 ¶1. Mr. Stewart was informed that this action

would be filed in the United States District Court for the Middle District of Florida,

Tampa Division and that he was welcome to join Mr. Wiand at the Court to file the motion. Wiand Decl.

Brookstreet moves this Court for a temporary restraining order and an Order to preliminarily enjoin Defendant Frank A. Datino ("Defendant"), and those acting in concert with him, including his attorneys, from proceeding with the arbitration filed by Defendant before the National Association of Securities Dealers Arbitration Tribunal pending the resolution by this Court of Plaintiff's Complaint.

Brookstreet requests that, within 10 days, this Court hear Brookstreet's Motion for Preliminary Injunction. Brookstreet seeks a preliminary injunction on the grounds that the controversy between the parties is not arbitrable and the arbitrability determination is for the Court. Furthermore, Brookstreet will be irreparably harmed by the deprivation of its constitutional rights if injunctive relief is not granted.

Whether a dispute is arbitrable is a question for resolution by a court. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). As the U.S. Supreme Court has expressly held, "[c]ourts should not assume that parties have agreed to arbitrate arbitrarily in the absence of 'clear and unmistakable' evidence that they so agreed." *AT&T Techs., Inc.*, 475 U.S. at 649. It is now well-settled that the threshold question of arbitrability , *i.e.*, whether the is an existing agreement between the parties to arbitrate a particular dispute, is generally to be decided by the court, not the arbitrators. *Investors Capital Corp. v. Brown*, 145 F.Supp. 2d 1302, 1305 (M.D. Fla. 2001).

2

Brookstreet has notified the NASD that it does not agree to voluntarily arbitrate the Defendant's claim as he was not a customer of and did not have any accounts with Brookstreet and that Brookstreet contested the NASD's jurisdiction thereto.   As there is no agreement of any kind between the parties — let alone an agreement between the parties to arbitrate the question of arbitrability — the arbitrability issue must be determined by a court of law.

Accordingly, Brookstreet requests that the Court enter a temporary restraining order and a preliminary injunction enjoining Defendant from proceeding with the arbitration pending resolution of Plaintiff's action.

WHEREFORE,  Brookstreet Securities Corporation respectfully requests that its Motion be granted, and that Defendant and his attorneys acting in concert with Defendant be enjoined from proceeding with his arbitration.

This the 16th day of August, 2002.

Respectfully submitted,

Burton W.  Wiand, FBN 40690
Michael S. Lamont FBN 527122
FOWLER WHITE BOGGS BANKER, P.A.
501 E. Kennedy Blvd.
Tampa, Florida 33601
Telephone: (813) 228-7411
Fax: (813) 229-8313
Attorneys for Plaintiff

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _16TH_ day of August, 2002, a true copy of the

foregoing was provided by hand delivery to the following:

J. Benton Stewart, Esq.
The Stuart Law Group, P.L.
P.O. Box 18246
Tampa, FL 33679-8246

_____
Attorney

4